BLAKE *v.* FOX.

*(Common Pleas of New York City and County, General Term.* February 1, 1892.)

1. PERSONAL INJURY TO TENANT—LIABILITY OF LANDLORD.

   The liability devolving upon a landlord for the use of a defective rope in a dumb-waiter in a tenement-house, causing personal injuries to a tenant, is not lessened by the fact that the rope was rendered defective by an alteration in the dumb-waiter, made gratuitously for the accommodation of the tenants.

2. SAME—DEFECTIVE WORK—NOTICE TO LANDLORD.

   In such case it was immaterial, with respect to the landlord's liability, whether the person making the alteration was his servant or an independent contractor, and whether the landlord had or had not notice of the defective work.

3. SAME—NEGLIGENCE—EVIDENCE.

   Evidence that a landlord, on increasing the height of draught of a dumb-waiter designed to carry 350 pounds, instead of providing a new rope, "spliced" an old rope for that purpose, justifies a submission of the question of negligence on the part of the landlord in that respect, causing personal injuries to a tenant.

Appeal from city court, general term.

Action by Andrew P. Blake, an infant, by guardian *ad litem,* against Simon Fox, for damages from alleged negligence of defendant. Plaintiff resided with his mother in a tenement-house of defendant, where she hired apartments. A dumb-waiter operated between the cellar and the upper stories of the building for the general use of tenants in carrying coal and other things to their rooms. This dumb-waiter was in the custody and control of defendant landlord. At the instance of tenants, defendant undertook to arrange for the dumb-waiter to run to the top of the house; and this alteration required a lengthening of the rope by which the dumb-waiter was operated. Instead of procuring a new and longer rope, the old rope was "spliced." Within three days after the change the rope parted at the splice, was precipitated to the floor of the cellar, and by its fall inflicted the injury complained of on the plaintiff. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

*Samuel W. Weiss,* for appellant. *Wakeman & Campbell,* (*T. B. Wakeman,* of counsel,) for respondent.

PRYOR, J. In legal effect, the relation between the plaintiff and defendant was that of landlord and tenant, and their respective rights and liabilities in the action are to be determined by that relation. The dumb-waiter being provided by the landlord for the common use of tenants, it was his duty "to use reasonable care to keep it in repair and suitable condition." *Peil* v. *Reinhart,* 127 N. Y. 381, 384, 385, 27 N. E. Rep. 1077; *Ritterman* v. *Ropes,* 51 N. Y. Super. Ct. 25; *Tousey* v. *Roberts,* 53 N. Y. Super. Ct. 446; *Dawson* v. *Sloan,* 49 N. Y. Super. Ct. 304, affirmed, 100 N. Y. 620. And that duty he cannot escape by delegating its performance to another, but is still responsible for its negligent performance by whomsoever he substitutes as his representative. *Fuller* v. *Jewett,* 80 N. Y. 46, 52; *O'Sullivan* v. *Norwood,* 14 Daly, 286. Nor was the rigor of the obligation incumbent on defendant at all relaxed by the fact that he undertook the alteration of the dumb-waiter for the accommodation of his tenants; the rule being that, although the service was gratuitous, he was nevertheless liable for misfeasance in its performance. *Coggs* v. *Bernard,* 1 Smith, Lead. Cas. 375, 376. Such being the principle of the liability incumbent on defendant, these two corollaries are inevitable, namely: *First,* it is immaterial whether the man who made the alteration was a servant of the defendant or an independent contractor; and, *secondly,* it is immaterial also whether he had notice of the defective performance of the work. In contemplation of law, the work was his work, and so his liability for its negligent performance is absolute.

Otherwise, however, had the work been properly done, and its defect a subsequent condition, for then notice of the defect, or its equivalent, might have been a prerequisite of liability. Obviously, therefore, most of the exceptions apparent in the case are untenable.

The only question, then, for determination is whether the evidence of negligence in the performance of the work was sufficient to take the case to the jury; for, if so, we are concluded by the action of the court below. The dumb-waiter being designed for a weight of 350 pounds, plainly a rope of considerable consistency and strength was necessary to its secure operation. And yet, instead of supplying a new rope, the defendant was content to "splice" the old one. That the splicing was the cause of the break is not controverted, and that the splicing was insufficiently and negligently done is supported by evidence abundantly adequate to sustain the verdict. The point that the negligence of the mother contributed to the child's injury, though raised on the trial, is not presented by the argument on appeal. However, the issue was submitted to the jury by a correct charge, and their decision is sufficiently supported by the evidence. The apparent error in the charge as to the rule of damages was repaired by the subsequent explanation of the learned justice. We have no jurisdiction to reverse the judgment for the amount of damages, even if we deemed it excessive, which, however, is not apparent. Judgment affirmed, with costs. All concur.