MRS. EMMA LYNE LIVINGSTON v. THE ESSEX INVESTMENT CO.

(Filed 30 April, 1941.)

**1. Landlord and Tenant § 10—**

In the absence of an agreement between the parties, the lessor is not under duty to keep the premises in repair.

**2. Pleadings § 27: Negligence § 16—**

If defendant, in a negligent injury action, desires more specific and detailed allegations in the complaint as to the charge of negligence, he must aptly request that the court require the pleading to be made more definite and certain, C. S., 537, or request a bill of particulars, C. S., 534.

**3. Same—**

The right of a defendant to require plaintiff to make the complaint more definite and certain by amendment, or to require him to file a bill of particulars, must be preserved by motion made in apt time, and after answer is filed the matter is waived.

**4. Landlord and Tenant § 11—**

Where a landlord, having agreed with its tenant to repair the premises, undertakes to make repairs, the landlord is under duty to see that the repairs are properly made so as not to cause injury to the tenant, members of his family, his guests and invitees, and the landlord is liable in tort for injuries proximately resulting from the performance of the repair work in a careless and negligent manner.

**5. Same—**

Where the landlord undertakes to make repairs, he may not escape liability for negligence in the performance of the work on the ground that he employed an independent contractor to do the work, and the landlord is liable for negligent breach of duty in failing to see that the repairs are made in a workmanlike manner so as not to cause injury to the tenant regardless of whether the repair work is done by the landlord's employee, agent, or an independent contractor.

**6. Master and Servant § 4a—**

Evidence that defendant's authorized agent employed a workman by the hour to do certain repair work on the principal's property, that.the agent took the workman to the premises, visited the premises several times during the progress of the work, and directed what work should be done, establishes the relationship of master and servant between the principal and the workman, and not that of principal and independent contractor.

**7. Principal and Agent § 8a—**

Where an authorized agent employs a workman to do certain work for the principal, the legal effect is the same as though the principal itself had employed the workman, and the relationship of master and servant exists between the principal and the workman under the doctrine of *qui facit per alium facit per se.*

**8. Appeal and Error § 8—**

Where a landlord, sought to be held liable for negligence in the performance of repair work, does not contend in the lower court that the work was done by an independent contractor, and does not present such contention by allegation, evidence, exception to the issues submitted, or request for special instructions, he may not raise such contention in the Supreme Court on appeal, since the appeal will be decided in accordance with the theory of trial in the lower court.

**9. Landlord and Tenant § 11—Evidence held for jury on question of whether landlord, undertaking to make repairs, did work in negligent manner resulting in injury to tenant's wife.**

Plaintiff's evidence tended to show that her husband leased the premises in question from defendant, that the lease provided that defendant should keep the premises in repair, and further that defendant verbally agreed to repair the steps leading to the house, that defendant undertook to repair the steps and advised that the repairs had been completed, that after the repairs were made no defect was apparent in the steps, and that as plaintiff and her husband were walking down the steps, plaintiff stepped on a loose brick which caused her to fall to her injury. Defendant's allegation and evidence were to the effect that it knew of no defect in the steps, that it did not undertake to repair same, and that no repair

work was actually done on the steps. *Held:* The conflicting evidence raises an issue of fact for the determination of a jury and the denial of defendant's motion to nonsuit was proper.

**10. Trial § 32—**

If a party desires more particular instructions upon subordinate features of the case he must aptly tender request therefor.

BARNHILL, J., dissenting.

STACY, C. J., and WINBORNE, J., concur in dissent.

APPEAL by defendant from *Olive, Special Judge,* at August Term, 1940, of HENDERSON. No error.

This is an action for actionable negligence brought by plaintiff against defendant alleging damage. The defendant denied negligence and set up the plea of contributory negligence.

The plaintiff in her complaint alleged, in part:

"That said steps at the time of plaintiff's first inspection of the premises, were made of brick, and that a number of the bricks were loose and a larger number had been removed from the tread of the steps, and that the dangerous condition of the steps was readily apparent to even a casual inspection; that in order to repair said steps it would be necessary to replace the bricks that had been removed and reset them in mortar, and reset in mortar the bricks that were loose. . . . That defendant sent workmen out to the premises to make said repairs, and that said workmen worked at said repairs from time to time during October and November, 1937, and announced that the job was completed some time after the first of December, 1937. . . . That on the night of December 31, 1937, or in the early morning of January 1, 1938, plaintiff and her husband were going down the steps, which were well lighted, and that plaintiff's husband had hold of plaintiff's arm, and that in going down the steps together, side by side, plaintiff's position on the steps was off the center and to the left side of said steps, and on a part of said steps that was off the regular tread of said steps and which had not been used by plaintiff since said repairs, and that as plaintiff stepped on one of the bricks, the brick turned under her foot and threw her violently down the steps, breaking and shattering the bone of her upper left arm, and that plaintiff was completely disabled, etc. . . . That the said defendant in making repairs to said steps, was negligent in that the said bricks on that portion of the steps from which plaintiff was precipitated, as hereinbefore set out, were not properly encased in mortar and were left in an insecure and loose condition, by reason of which carelessness and negligence the said steps were in an insecure and unsafe condition at the time of the said injuries, and which said negligence was the proximate cause of the injuries hereinbefore set out. . . . That the defendant was negligent and responsible for said damages, for that the

servants employed by it conformably to its specific contract to repair said steps, instead of properly repairing the same and properly setting the bricks in mortar, negligently and carelessly replaced several bricks on the side of the steps apparently without any mortar at all, and left them loose and freely movable, and at the same time left said steps with the appearance of having been properly repaired and in such a condition as would deceive any person into believing that the steps were safe and ready for use, and that said defendant's servants or employees stated that said steps had been completely repaired, and had announced that they had finished the job on the steps, leaving the plaintiff and her husband under the impression and secure in the feeling that the steps had been repaired as had been contracted by said defendant."

The defendant in its answer says: "The defendant says that plaintiff's husband took possession of said premises under said written agreement on October 6, 1937, and that shortly thereafter the defendant entered into an agreement with one W. R. Douglas, a reputable, reliable and competent builder and contractor to make certain repairs to said house, but said contract with the said Douglas did not include or embrace any repairs to the steps referred to in plaintiff's complaint. That the workmen referred to . . . were sent by the said Douglas and not by this defendant, and said workmen were employed and paid by the said Douglas and were working for the said Douglas, and this defendant had no authority or control over the said workmen. . . . Answering further the complaint the defendant again denies that it had any agreement with anyone with respect to repairs of said steps and did not authorize or ratify any such repairs. The defendant alleges that it had no knowledge whatever of any defect in said steps either before or after the occupancy of said premises by the tenant and the first notice or knowledge that the plaintiff had claimed damages on account of the injury referred to in the complaint was a letter from plaintiff's attorney dated December 14, 1938, or approximately one year after plaintiff's alleged injury. And in this connection the defendant alleges that at the time written agreement was entered into as hereinbefore alleged that there was no noticeable defect in said steps and that the use of said steps, *per se,* was in no way dangerous, and that there was nothing about the appearance of said steps to put either the plaintiff or the defendant on notice of the alleged condition of same." .

In the further answer it is said: "That such repairs as the defendant undertook to make were done through an agreement with a reputable, competent and reliable contractor and builder. That the contract between said contractor and the defendant did not provide for any such repairs as alleged in the complaint and the defendant is advised and believes that said contractor did not in fact make, or attempt to make any repairs to said steps," etc.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the plaintiff damaged by the negligence of the defendant? Ans.: 'Yes.'

"2. If so, did the plaintiff by her own negligence contribute to her injuries, as alleged in the answer? Ans.: 'No.'

"3. What amount, if any, is plaintiff entitled to recover of the defendant? Ans.: 'Two thousand ($2,000) Dollars.' "

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*C. D. Weeks and L. B. Prince for plaintiff.*
*R. L. Whitmire for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence, the defendant in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error.

This action is brought by plaintiff, a tenant, against the defendant, the landlord, for actionable negligence.

It is well settled in this jurisdiction, as was said in *Salter v. Gordon,* 200 N. C., 381 (382): "In the absence of an agreement as to repairs the landlord is not obligated to keep the building in repair for the benefit of his tenant. *Improvement Co. v. Coley-Bardin,* 156 N. C., 255; *Fields v. Ogburn,* 178 N. C., 407; *Tucker v. Yarn Mill Co.,* 194 N. C., 756." *Williams v. Strauss,* 210 N. C., 200 (201).

In *Mercer v. Williams,* 210 N. C., 456 (458-9), the rule is again stated: "The *general rule* is, that a landlord is not liable to his tenant for personal injuries sustained by reason of a defective condition of the demised premise, unless there be a contract to repair which the landlord undertakes to fulfill and does his work negligently to the injury of the tenant. *Fields v. Ogburn, supra* (178 N. C., 407); *Colvin v. Beals,* 187 Mass., 250."

In the *Fields case, supra, Hoke, J.,* goes into the subject with thoroughness, citing a wealth of authorities, and says at p. 408: "In the absence of express stipulation on the subject, there is usually no obligation or assurance on the part of the landlord to his tenant that the premises will be kept in repair, or that the same are fit or suitable for the purposes for which they are rented. It is true that in the case of latent defects of a kind that import menace of appreciable injury when these are known to the landlord, and of which tenant is ignorant and not likely to discover on reasonably careful inspection, liability has been recognized

and recoveries sustained both on the ground of negligent breach of duty, and at times for fraud and deceit. . . . In *Colvin v. Beals,* 187 Mass. 250 (252), injury from a defective railing on a piazza, recovery was denied, the Court stating the general position applicable, as follows: 'The general rule in this commonwealth must be considered as settled, that a tenant cannot recover against his landlord for personal injuries occasioned by defective condition of the premises let, unless the landlord promises to repair, makes the repairs, and was negligent in making them.' " *Miles v. Janvrin,* 196 Mass., 431 (439).

The judge in the court below charged the jury correctly, to which no exception was taken, as follows: "Now, gentlemen of the jury, the court instructs you, as a matter of law, the general rule is: 'That the landlord, that is, the defendant in this case is not liable to the tenant for personal injury (and "tenant" includes his family and wife), the landlord is not liable to the plaintiff for injuries from the demised premises, that is, the defendant, as a general rule of law, would not be liable to the plaintiff for any personal injury sustained by reason of any defective condition there around the premises, but if there is a contract to repair and the landlord undertakes to fulfill the contract and does the work negligently to the injury of the plaintiff, in that case, gentlemen of the jury, the landlord would be liable.' "

In the present action there was an express stipulation between the landlord and the tenant to repair. In the lease is the following: "The lessor agrees to keep the building in repair during the said term except as against injuries thereto not due to natural causes."

C. E. Livingston, the husband of plaintiff, testified—unobjected to: "I made a contract with Mr. (Edward R.) Sutherland for the lease of a house, part of which was in writing and part verbal. Mr. Sutherland made or agreed to have the steps repaired." Mr. Sutherland signed the lease as agent of the defendant, Essex Investment Company, to make repair. The agency of Mr. Sutherland is in no way denied.

It will be noted that defendant did not demur, but answered the complaint.

In *Ricks v. Brooks,* 179 N. C., 204 (209), it is stated: "This case has been tried upon its merits, and the plaintiff has won upon the facts. Defendant showed by his answer that he understood the cause of action, and has actually supplied the omission, if any, in the complaint. If he found it too meager in its allegations, he had a remedy by asking that it be made more definite and certain by amendment. Rev., 496; *Blackmore v. Winders,* 144 N. C., 212; *Allen v. R. R.,* 120 N. C., 548; *Conley v. R. R.,* 109 N. C., 692; *Oyster v. Mining Co.,* 140 N. C., 135. Instead of availing himself of the several remedies above mentioned, the plaintiff trusted his case to the jury upon the issue, and having had a fair chance

to present it, his motion does not commend itself to our favorable consideration."

N. C. Code, 1939 (Michie), sec. 537 (former Rev., 496), is as follows: "If irrelevant or redundant matter is inserted in a pleading, it may be stricken out on motion of any person aggrieved thereby, but this motion must be made before answer or demurrer, or before an extension of time to plead is granted. When the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made definite and certain by amendment."

The plaintiff's evidence on the trial was substantially the allegations set forth in the complaint, the defendant's evidence was to the contrary. The issues submitted to the jury were in accordance with the complaint and answer. Defendant neither objected to the issues nor submitted other issues. The case in the court below was tried out on the allegations and denials in the complaint and answer. If the defendant desired more specific and detailed allegations in the complaint as to the charge of negligence, it should have requested the complaint to be made more definite and certain under the statute *supra,* or requested a bill of particulars under section 534, *supra.* Having answered, the matter is waived.

In *Allen v. R. R.,* 120 N. C., 548, it is held: "Where a complaint in an action for negligence was defective in not definitely and sufficiently setting out the negligence complained of, objection thereto should have been taken, not by demurrer, but by motion to have the plaintiff make his complaint more definite." *Bowling v. Bank,* 209 N. C., 463.

If the landlord, having agreed with its tenant to repair the brick steps on the demised premises leading to the dwelling, undertakes to repair said steps through its agent and employees, who do the work in a negligent and careless manner, as a proximate result of which the tenant's wife sustains physical injuries, is the landlord liable in damages? We think so, under the facts and circumstances of this case.

In 16 R. C. L., sec. 565, p. 1045, citing a wealth of authorities, is the following: "It is the generally accepted rule that whether there is a covenant to repair or not, the lessor will be liable for injuries caused by his negligence or unskillfulness or that of his servants and employees in making repairs to the leased premises, and it has been held that a landlord undertaking to repair leased premises at the request of his tenant, when under no obligation so to do, and who assures his tenant that such repairs have been made, is answerable to the tenant if the latter, relying on such assurance, suffers injury by reason of the defects not being properly repaired. . . . (p. 1046). But if the landlord voluntarily repairs and actually enters upon the carrying out of his scheme of repair, he will be responsible for the want of due care in the execution of the

work, upon the principle of liability for negligence, without reference to any question of implied contract to repair, or implied consideration. Even in those jurisdictions where it is held that a tenant cannot sustain an action of tort for personal injuries received by him because of the breach of the landlord's covenant to keep the premises in repair, *if the landlord makes the repairs in accordance with the agreement, and is negligent in making them, the tenant may recover for resulting personal injuries.*" (Italics ours.) *Miles v. Janvrin, supra.*

The same rule is set forth in 32 American Jurisprudence, "Landlord and Tenant," sec. 724, p. 599, citing a wealth of authorities. In section 741, pp. 618-19, the rule is thus stated: "It is a well-established principle that one cannot relieve himself of the consequence of neglect in the performance of his agreement by employing an independent contractor to do the work, and the courts generally agree that a landlord who undertakes to make repairs or improvements for the benefit of his tenant, whether he is obligated by law or by agreement with the tenant to do so, or whether he does so gratuitously, cannot relieve himself from his liability for negligence in making such repairs or improvements by employing an independent contractor to do the work; if he does employ an independent contractor who does the work so negligently as to cause injury thereby, the landlord is liable to the same extent as if he had done the work himself. The landlord in making repairs and improvements on the demised premises owes a duty of reasonable care to the occupying tenant which he cannot escape by placing the work with an independent contractor, especially if the work to be done is attended with danger to the tenant. The rule extends in favor of members of the tenant's family and his guests and invitees,—those to whom the landlord owes the same duty of care and protection from negligent injury as he does to the tenant."

The defendant contends that he "had discharged his liability in employing a competent person to do the work, whether that competent person served as his servant, agent or as an independent contractor." We cannot so hold.

In *Doyle v. Franek,* 118 N. W. (Neb.), 468 (469), a landlord undertook to move a dwelling occupied by the plaintiff and removed the front steps which were immediately replaced but in a negligent manner resulting in injuries to the plaintiff, and the Court said: "The defendant argues that because the steps were removed and replaced by an independent contractor, or without any direction from or knowledge of the defendant, he is thereby relieved from liability. It is urged the negligence complained of was not the neglect of the defendant, but that of an independent contractor. We do not think this contention is sound. Conceding that the relation of landlord and tenant existed between the parties to this action, we think it is clear that the landlord is not relieved

of liability for injury to his tenant by the fact that he employed an independent contractor to perform the work of moving the house. So long as the relation of landlord and tenant existed between the parties, the landlord owed a duty to the defendant not to do, or cause to be done, anything which would render the premises dangerous and unsafe for his tenant. Where one owes an absolute duty to another, he cannot acquit himself of liability by delegating that duty to an independent contractor (citing authorities). In *Peerless Mfg. Co. v. Bagley,* 126 Mich., 229, 53 L. R. A., 287, it was held: 'Where a landlord undertakes to make repairs or improvements for his tenant, he cannot relieve himself of the consequences of neglect in the performance of his agreement by employing an independent contractor.' "

The rule as set out in Restatement of the Law of Torts, sec. 420, p. 1135 : "A lessor of land who employs an independent contractor to make repairs which the lessor is under no duty to make, is subject to the same liability to the lessee and others upon the land with the consent of the lessee for bodily harm caused by the contractor's negligence in making or purporting to make the repairs as though the contractor's conduct were that of the lessor."

In *Vollrath v. Stevens* (Mo.), 202 S. W., 283, a carpenter was engaged by a landlord to repair steps on leased premises and the following was stated by the Court, at p. 286, par. 14 : "The evidence shows that when plaintiff complained of the defective condition of the premises in 1909, defendant's agent sent a carpenter to make the repairs and defendant says that, as the carpenter furnished his own materials and used his own methods in doing the job, he was an independent contractor, and for that reason, if the result of his work was that the repairs were not properly made, the defendant is not liable. This contention of the defendant is not well taken. If the lessor undertakes to have repairs made when he has not covenanted to do so, a duty is cast upon him to see that the repairs are made so as not to injure the tenant, and the rule concerning independent contractors has no application." *Blake v. Fox,* 17 N. Y. Supp., 508.

W. R. Douglas testified, in part: "I know where the Livingston house is and did some work out there. I started the work November 24, 1937, and finished it the 4th day of December, 1937. Mr. Sutherland had me to do the work. I did the work by the hour. . . . Mr. Sutherland took me out there and showed me what repairs he wanted and we went back afterwards and he said we should paint the entire outside. . . . I examined the steps briefly and Mr. Sutherland was with me and we decided there was nothing sufficient to warrant any work being done on them. . . . Mr. Sutherland engaged me to go out there and do the repairs. Mr. Sutherland was probably out there a couple of times during

the process of the work." The foregoing constitutes all of the testimony of the witness, W. R. Douglas, as to the contract. The witness, E. R. Sutherland, did not attempt to testify as to the terms of his contract with W. R. Douglas. The only testimony from him relative to that is as follows: "In dealing with Mr. Douglas I did not retain any control over the method he used."

In *Aderholt v. Condon,* 189 N. C., 748 (755), we find: "The test of independence and agency or servant is laid down in 14 R. C. L., pp. 67-8, as follows: 'The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor.'" *Greer v. Construction Co.,* 190 N. C., 632 (637).

In *Rosenberg v. Zeitchik,* 101 N. Y. Suppl., 591 (592), we find: "Under the circumstances of this case, it was the duty of the landlord to make the repairs, and the fact that he made a contract with someone to do the work does not relieve him from liability for negligence to his tenant."

The work that Sutherland, the agent of the defendant, employed Douglas to do, was in the relation of master and servant. He was not an independent contractor. The principle is well settled: *Qui facit per alium facit per se.* He who acts through another acts himself—*i.e.,* the acts of an agent are the acts of the principal. Broom, Max., 818, *et seq.;* 1 Bl. Comm., 429.; Story, Ag., sec. 440. We see no good reason why a landlord should be an exception to the ordinary rule of master and servant. We can find nowhere in the pleadings or evidence in the court below where defendant contended that Douglas was an independent contractor. Defendant's defense was: (1) Denial that the defendant made an agreement to repair the steps, that the defendant did not employ Douglas or anyone else to repair the steps, and that the steps were not repaired at all. (2) That the plaintiff was guilty of contributory negligence.

Counsel for defendant tendered no issue relating to the principle of independent contractor, did not except to the issues submitted by the court, did not ask for any special instruction relating to the principle of independent contractor, made no contention that this relationship existed, and at the close of the judge's charge, after he had stated all of the contentions of the parties without embracing in such contentions for the defendant any reference to the doctrine of independent contractor, the court directed this question to counsel for all parties: "Is there any other evidence or any other contentions to which you wish to call the court's attention, gentlemen (of counsel)?" To this question, counsel for the defendant made no answer.

It is well settled, as stated in McIntosh Prac. and Proc., at pp. 803-4: "When the case has been tried below on a certain theory, it must be heard on appeal upon the same theory, and the party will not be allowed to change his ground between the lower court and the appellate court. The erroneous admission of a proposition of law in the lower court will not be binding, but the appellate court has respect to the theory upon which the case was tried. Any other course would be unjust to the judge who tried the case and to the appellee, and the party, having selected the ground upon which he chooses to fight, should not be allowed to have another chance, after losing, by shifting his ground. When the case was tried upon the theory of a tort, or upon a certain theory of damages, the appellate court will not determine it upon a different theory which might have been adopted."

The plaintiff's evidence as to defendant's duty to repair the steps on which plaintiff was injured, was denied by defendant. This was a question for the jury. All the evidence was to the effect that Sutherland was the agent of defendant. He had the authority to make the contract with the plaintiff for repairing the steps and signed the contract for defendant. The witness Hollingsworth testified, in part, for plaintiff: "I am a mechanic, carpenter and bricklayer. . . . I examined the steps the next morning and found there were two loose bricks that you could lift out in the last flight of steps a little bit more than half down. It was on the second flight. I replaced the bricks myself. Mr. Livingston asked me if I could fix them and I said 'Yes,' and went out there and cleaned them off and put them back with cement. The material I found between the brick was lime and sand because I cleaned them off without any trouble. No cement. I have done work laying brick. The brick sloped over at least an inch over the foundation that the brick was laid on." This evidence was not objected to by defendant and was permissible under plaintiff's complaint. The court below charged so carefully and accurately the law applicable to the facts that defendant made no exception to same. If the defendant in a proper prayer for instruction did not request the court below to charge subordinate features of the case, it is now too late for defendant to complain.

In *Peterson v. McManus,* 210 N. C., 822 (823), the law is thus stated: "If they desire special instructions upon any phase of the law involved, not given in the general charge, they should have filed written request therefor. *Harris v. Turner,* 179 N. C., 322 (325), and cases there cited."

From a careful review of the record and the able briefs of the parties, the exceptions and assignments of error made by defendant cannot be sustained. We can see on the record no prejudicial or reversible error.

No error.

BARNHILL, J., dissenting: There is sufficient evidence in the record tending to show that the defendant, through its agent, at the time it leased the residence to plaintiff's husband, contracted to make repairs, including repairs to the steps. There is also evidence that the defendant undertook to comply with this agreement and did, in fact, through a contractor employed by it, make repairs to steps, as well as to the dwelling.

The steps from which plaintiff fell are not steps to the residence. The residence is located upon a lot, the elevation of which is above the street level. The steps to which reference is made are those which lead from the surface of the lot to the level of the street. The plaintiff having fallen as she passd down the steps and having received personal injuries, brings this action in tort for damages, alleging negligence.

The allegation of negligence is this:

"8. That the said defendant in making repairs to said steps, was negligent in that the said bricks on that portion of the steps from which plaintiff was precipitated, as hereinbefore set out, were not properly encased in mortar and were left in an insecure and loose condition by reason of which carelessness and negligence the said steps were in an insecure and unsafe condition at the time of said injuries, and which said negligence was the proximate cause of the injuries hereinbefore set out."

The plaintiff expressly alleges further that after the repairs to the steps were made that the steps "appeared to have been properly repaired, and that the bricks that had been removed were replaced, and that the plaintiff, with her husband, detected no defects in the steps and used the same for a period of two or three weeks . . . that there was nothing about the appearance of said steps to indicate in any way the condition hereinafter set out."

The liability of a lessor who is under contract to make repairs, for failure to make such repairs or for failure to have the repairs made in a workmanlike manner, depends upon the circumstances and is, to a large measure, dependent upon the purpose for which the premises are leased and the terms of the agreement. Thus it is that when premises are demised for the common use of several tenants and certain parts thereof —such as passageways in tenant houses, apartment buildings and the like—are reserved by the landlord for the common use of all the tenants, there is liability for a negligent failure to keep such property reserved for the common use of all in proper repair. *Bolitto v. Mintz,* 148 Atl., 737, and cases cited.

Here, however, the property was demised for private use as a dwelling. What is the liability, if any, of the landlord for personal injuries sustained by the tenant's wife because of the defective condition of the

steps leading from the surface of the lot down to the surface of the street, is the question presented.

While, in ordinary parlance, the word "negligence" may mean any type of carelessness, when used in a legal sense, it has a definite, technical meaning. The term as used in the textbooks and in the decisions of this and other courts means a failure to perform some duty imposed by law. It is a want of due care in the performance of a legal duty. To establish actionable negligence it must appear: first, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed, proper care being that degree of care which a prudent man should use under like circumstances when charged with a like duty, and second, that such negligent breach of duty was the proximate cause of injury to person or damage to property. If we are to follow an unbroken line of decisions of this Court and the generally prevailing view we must give the word "negligence" this meaning in interpreting and applying decisions and textbook statements in arriving at our conclusion upon the question presented.

Negligence is bottomed on a breach of duty imposed by law. An action of damages caused by negligence is an action *ex delicto,* and it is a cardinal principle of law that a mere breach of contract does not, in and of itself, constitute a tort. The contract creates a relationship. The relationship so created, in some instances, imposes a legal duty. It is the breach of the legal duty thus imposed, and not the breach of the contract, that gives rise to an action in tort for negligence.

Where there is a contract to repair, a failure to make repairs or a failure to adequately and properly repair, is nothing more than a breach of contract. To give rise to an action in tort something more must appear.

The view is taken that where the only relation between the parties is contractual the liability of one to the other in an action of tort for negligence must be based upon some positive duty which the *law* imposes because of the relationship or because of the negligent manner in which some act which the contract provides for is done, and the mere violation of the contract where there is no legal duty is not the basis of such an action. 32 Am. Jur., 598; Anno., 8 A. L. R., 774; Anno., 68 A. L. R., 1203; *Jacobson v. Leventhal,* 128 Me., 424; 68 A. L. R., 1192.

"The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise. Otherwise, the failure to meet a note, or any other promise to pay money, would sustain an action in tort for negligence, and thus the promisor be made liable for all the consequential damages arising from such failure. As a general rule, there must be some active negligence or misfeasance to

support tort. There must be some breach of duty distinct from breach of contract." *Tuttle v. Mfg. Co.,* 145 Mass., 169. There must be something more than a breach of contract, *viz.,* negligence. Upon no other theory can a basis be established for an action sounding in tort. *Kohnle v. Paxton,* 268 Mo., 463. "Put more plainly, an agreement to repair does not contemplate a destruction of life or an injury to the person which may result accidentally from an omission to fulfill the terms of the agreement." *Kohnle v. Paxton, supra.*

While some relationships created by contract—such as master and servant, carrier and passenger—impose certain legal duties, no such legal duties result from the creation by contract of the relationship of lessor and lessee or landlord and tenant, when the property demised is for a private use.

Where the right of possession and enjoyment of the leased premises passes from the lessor the cases are practically agreed that in the absence of concealment or fraud by the landlord as to some defect in the premises known to him and unknown to the tenant the rule of *caveat emptor* applies and the tenant takes the premises in whatever condition they may be in, thus assuming all risks of personal injuries from defects therein. This doctrine is in harmony with the common law rule that a lease is a conveyance of an estate or of an interest in real property or a transfer of the right to the possession and enjoyment of real property for a specified period of time or at will. In other words, it is a demise of real property for a limited time. The lessor merely sells, and the tenant buys, the right of use and occupancy for the period specified in the lease. So far as concerns the condition of the premises the relation created by a lease is substantially similar to that created by a deed or a contract for the sale of real property with the right of possession. By the greater weight of authority the fact that the lessor covenants to repair the premises does not affect this rule so far as concerns the lessor's liability for personal injuries to the lessee or those in privity with him due to defects in the premises leased for a private purpose, the possession of which has passed to the lessee, although the existence of the defect is attributable to the failure of the lessor to repair according to his covenant. See numerous cases cited in Anno., 8 A. L. R., 766. If the tenant claims that the repairs are not sufficient it is his duty to give notice thereof to the landlord and if he continues to occupy the premises the presumption obtains that he is satisfied with the repairs that have been made. Anno., 28 A. L. R., 1527; *Cromwell v. Allen,* 151 Ill. App., 404.

What then is the meaning of the statement contained in decisions of this and other courts to the effect that "the general rule is, that a landlord is not liable to his tenant for personal injuries sustained by reason of a defective condition of the demised premises, unless there be a con-

tract to repair which the landlord undertakes to fulfill and does his work negligently to the injury of the tenant." *Mercer v. Williams,* 210 N. C., 456, 187 S. E., 556; *Jordan v. Miller,* 179 N. C., 73, 101 S. E., 550; *Fields v. Ogburn,* 178 N. C., 407, 100 S. E., 583; *Colvin v. Beals,* 187 Mass., 250.

It certainly does not mean that a tenant may recover for personal injuries alleged to have resulted from a mere failure on the part of the lessor to make repairs in a careful and workmanlike manner, for such damages are too remote and are not deemed to have been within the contemplation of the parties in making the contract. *Jordan v. Miller, supra; Hudson v. Silk Co.,* 185 N. C., 342, 117 S. E., 396; *Williams v. Fenster,* 103 N. J. L., 566, 137 Atl., 406; *Jacobson v. Leventhal, supra;* 16 R. C. L., 1095; Anno., 68 A. L. R., 1195.

A contract to repair does not contemplate as damages for the failure to perform it that any liability for personal injuries shall grow out of the defective condition of the premises; but the duty of the tenant, if the landlord fails to properly perform his contract to repair, is to do the work himself and recover the costs in an action for that purpose. *Jordan v. Miller, supra;* 16 R. C. L., 1059, sec. 580; Anno., 8 A. L. R., 766; Anno., 68 A. L. R., 1195. The tenant may either notify the landlord that the repairs are insufficient or he may make the repairs and recover the reasonable expense or costs thereof from the landlord or charge it against the rent. Cases cited in notes 32 Am. Jur., 591.

The question is to be answered by first determining what legal duty, if any, is imposed upon the landlord under a contract of rental.

In the absence of warranty, deceit, or fraud on the part of the landlord, the rule of *caveat emptor* applies to leases of real estate, the control of which passes to the tenant, and it is the duty of the tenant to make examination of the demised premises to determine their safety and adaptability to the purposes for which they are hired. Hence, for personal injuries received by him from latent defects therein, of which the landlord had no knowledge at the time of the lease, the latter cannot be held responsible. 32 Am. Jur., 538, and cases cited in notes. 16 R. C. L., 775. So a landlord may be liable for not disclosing a latent source of danger, known to him to be such, and not discoverable by the tenant, 32 Am. Jur., 539, and cases cited in notes. This duty of disclosure arises not directly from the contract but from the relationship created by the contract, *and is imposed by law* by reason of such relationship.

When the lessor knows of latent defects which are attended with danger to an occupant and which a careful examination would not disclose, the lessor is bound to reveal them, in order that the lessee may guard against them. While the failure to reveal such facts may not be actual fraud or misrepresentation, it is such negligence as may lay the foundation of

an action against the lessor if injury occurs.　32 Am. Jur., 541; 16 R. C. L., 776; *Fields v. Ogburn, supra,* and cases cited; *Jordan v. Miller, supra; Hudson v. Silk Co., supra; Tucker v. Yarn Mill Co.,* 194 N. C., 756, 140 S. E., 744; *Mercer v. Williams, supra.*

In the *Miller case, supra,* it is said that even where the lessor contracts to keep the premises in repair, the breach by the landlord of his contract will not ordinarily entitle the tenant, personally injured by a defect therein, existing because of the negligence of the landlord in failing to comply with his agreement to repair, to recover indemnity for such injuries, whether in contract or in tort, since such damages are too remote and cannot be said to be fairly within the contemplation of the parties.　The *Mercer case, supra,* is to like effect.

When the lessor contracts to make repairs and fails to make needed repairs or makes such repairs in an unworkmanlike manner this amounts to a breach of his duty imposed by the contract and does not give rise to an action in tort for negligence.　By the greater weight of authority a breach of the covenant to repair, except as to latent defects known to the lessor and of which the tenant is ignorant, imposes no liability for personal injuries to the lessee or those in privity with him due to defects in the premises leased for a private use.　Anno., 8 A. L. R., 766; 32 Am. Jur., 597.

Hence, as I view the law as disclosed by our decisions, by the textbooks and by the decisions of other courts, the only legal duties resting upon the landlord by reason of his contract relation created by the demise are: (1) to give notice of latent defects, existing at the time of the demise, of a kind to import menace of appreciable injury, when these are known to the landlord and of which the tenant is ignorant and is not likely to discover on reasonably careful inspection; and (2) in making repairs to refrain from creating such latent dangerous defects, and, if created, to give notice thereof to the tenant.

A breach of either of these duties imposed by law creates liability for resulting personal injuries under the law of negligence, the liability of the landlord not being so much dependent upon or affected by the covenant to repair as it is upon his affirmative wrong in creating or failing to give notice of a dangerous condition not observable by the tenant.

If the repairs are made in such manner as to leave latent dangerous defects which are known to the landlord and of which the tenant is ignorant and is not likely to discover on reasonably careful inspection, liability has been recognized and recovery sustained on the ground of negligent breach of duty.　While the failure to reveal such facts may not be actual fraud or misrepresentations it is such negligence as may lay the foundation of an action against the lessor if injury results.　32 Am. Jur., 541; *Fields v. Ogburn, supra.*

Whether we accept the law as I understand it to be or as stated in the majority opinion (and there is no substantial difference when the proper meaning is given to the term "negligence," as used in the authorities cited), the plaintiff has failed to offer evidence sufficient to sustain her alleged cause of action.

On the question of negligence the evidence is brief.

Plaintiff's husband testified: "After the work was done the appearance of the steps was good. The steps appeared to be in good shape. There was nothing about their appearance to indicate that any brick might be loose or improperly set in the mortar. . . . After daybreak I examined the steps and found one brick had come out and there seemed to be another loose one next to it *on the right side coming down* . . . The steps where my wife fell were made of brick that had mortar between them . . . The mortar is apparent to anyone walking the steps . . . My wife and I went up and down the steps during that period every day and we observed nothing at all wrong with them . . . During that time as I walked up and down the steps I did not feel any loose bricks. Every day during that period of time my wife and children were going up and down the steps. There was not a thing in the world to indicate anything other than that those steps had been properly repaired . . . She (plaintiff) walked on my left side . . . She slipped and fell and I picked her up . . . On the night my wife was injured *she was on the extreme left side* and I was on the right side."

The plaintiff testified: "I used the steps after they were repaired usually going down the center. I observed the steps. They seemed to be in perfect condition. On the night of the accident *I was going down the left-hand side*. We were walking down the steps together . . . When I stepped on the brick it gave away with me. It gave way under my weight. It threw me and I hit my chin against the running board of the car and fell on my left arm . . . After the steps were repaired they looked like they were in perfect condition. As I walked up and down the steps the bricks were in plain view. The spaces between the bricks were clearly visible to me as I walked up and down. My husband and I had been going up and down the steps practically every day from the time they were repaired until I was hurt. There was about one-half inch of mortar between the bricks. It just looked like any other finished brick job. The steps were built by the bricks being placed side by side with mortar between them."

The witness who repaired the steps after the accident testified: "I examined the steps the next morning and found there were two loose bricks that you could lift out in the last flight of steps a little bit more than half down. It was on the second flight . . . The material I found between the brick was lime and sand because I cleaned them off

without any trouble. No cement . . . There was one brick separate and two together. The two were still sticking together after I made the examination. I broke them apart with my hands. Nothing to hold them but lime and sand. There was about one-half inch of mortar between the bricks. I have heard of builders who would tie bricks together without cement. They will not hold together securely. They will stick together if the foundation is wide. The filling was between the bricks. But looking at the filling between the bricks I don't know whether you can tell the mortar has cement in it or not. I cannot tell by looking at the mortar whether it has cement or whether it hasn't . . . When brickwork is exposed to the weather day in and day out and even if the mortar has cement, I think it will rot out in time. *This mortar that I saw between those bricks had the appearance of having been there a long time* . . . I saw the steps before they were repaired and the Livingstons moved in. At that time there were several bricks out. These bricks were out at the same place that I repaired them. I could see there were repairs."

Another witness for plaintiff testified: "I remember seeing the steps fixed before Christmas and the men who fixed them put mortar between the bricks . . . There was a couple of brick off of the bottom step. *Not the step she fell off of.* The family had been using the steps during that six weeks period."

This evidence tends to show that the brick were properly encased in mortar. There is testimony that there were two loose brick. It is significant, however, that these loose brick were found on the right-hand end of the steps going down, while all the testimony tends to show that plaintiff went down the extreme left-hand end. According to her testimony and the testimony of all the other witnesses for plaintiff, she passed nowhere near the two loose brick about which testimony was offered.

The argument was made here that in laying the tread of the steps the outer line of brick was so laid that they extended about one inch over the base and that it was one of these brick that came loose and tripped the plaintiff. There is not a particle of evidence in the record to sustain this argument. "There was a couple of brick off of the bottom step. *Not the step she fell off of.*" Thus, there is a total absence of evidence that there were any loose brick in the steps along the course followed by the plaintiff at the time she fell.

The only suggestion that the repairs were not made in a workmanlike manner is contained in the evidence of the witness who repaired the steps after the accident. He stated that the mortar appeared to have been made with lime rather than with cement. There is, however, no evidence that lime is not a proper ingredient in common use in making mortar.

On the contrary, it is a matter of common knowledge that it is used as an adhesive or binder. "Lime is much used in the preparation of cements and mortars . . . to lime is to glue together; to cement." Webster's New Inter'n. Dict. (2d).

Plaintiff and her husband used these steps for about six weeks after they were repaired. There was mortar between the brick and they appeared to be in a perfectly safe condition. They anticipated no damage from the use thereof. How then can it be said, even if we admit negligence, that the defendant, domiciled in another state, could or should have foreseen that injury was likely to occur?

At most the evidence shows that plaintiff stepped on a loose brick and it "gave way under my weight." There is no evidence that this brick was not "properly encased in mortar" or that it was "in an insecure and loose condition" before the accident. *Res ipsa loquitur* does not apply. We may not assume, in the absence of proof, that the brick gave way under her weight due to the manner in which it was set by defendant. Furthermore, there is a total failure of proof that the brick on which she stepped was one of those replaced by the workmen in making repairs. Nor is there any evidence that its condition prior to the accident was such as to put defendant on notice and thus impose liability for a failure to repair.

There is no allegation that defendant in making repairs created a latent dangerous defect. Nor is there any evidence thereof. Hence, there is neither allegation nor proof of the breach by defendant of any duty imposed by law. In fact, there is scant, if any, evidence of a failure to make repairs in a careful and workmanlike manner. I am, therefore, of the opinion that the motion for judgment as of nonsuit should have been sustained.

STACY, C. J., and WINBORNE, J., concur in dissent.