**SCHNADIG CORPORATION, Plaintiff,**

**v.**

**Billy Fred WALSER and Bob Walser, Individually, and as Partners trading and doing business as Bill's Truck Stop, Shiloh Miller and Grubb Oil Company, Defendants.**

**Civ. A. No. C-1-S-66.**

United States District Court
M. D. North Carolina,
Greensboro Division.

Dec. 16, 1966.

Falk, Carruthers & Roth, by Herbert S. Falk, Jr., and Walter Rand, III, Greensboro, N. C., for plaintiff.

Smith, Moore, Smith, Schell & Hunter, by McNeill Smith, and James R. Turner, Greensboro, N. C., on behalf of Walser and Miller, defendants.

Jordan, Wright, Henson & Nichols, by Perry C. Henson, and Edward Murrelle, Greensboro, N. C., of counsel on behalf of defendant Grubb Oil Co.

OPINION:

HAYES, District Judge:

This action was brought by plaintiff against Billy and Bob Walser, partners trading as Billy's Truck Stop and their employer Shiloh Miller and Grubb Oil Co., to recover damages for the destruction of property by a gasoline fire. The parties stipulated the damages to the tractor were $3300.00; to the trailer $1816.00, and the cargo of furniture $4500.00. There were other damages not stipulated. The jury awarded a verdict for $11,516.59.

Grubb Oil Company is the distributor of Atlantic Gasoline in Davidson County, North Carolina where the accident occurred.

The Walsers had operated two gas stations for the Grubb Oil Co. near the Yadkin River for three years. The State condemned the location to widen the highway. Thereafter the Grubb Oil Co. procured about 5 acres of land on the South side of the town of Lexington at the junction of #29 and #29 new by-pass. It erected there a building the first floor of which was used as a restaurant and the top floor as a sleeping quarters for truck drivers. It built six concrete islands 2½ feet by 20 feet and located on each island two pumps for the distribution of gasoline and diesel oil and fuel. It furnished and installed electric motors and pumping equipment in each of these twelve pumps to draw gasoline from its buried storage tanks and pump it into automobiles and truck or tractor tanks. It procures Walser brothers to operate these premises under an Oil Contract by the terms of which Grubb Oil Co. was to inspect, repair and maintain the pumping equipment, including the wiring, but Walsers were to maintain the restaurant. Walsers were to retail the gasoline supplied by Grubb Oil Co. and pay it one cent on each gallon of fuel sold.

Upon the completion of the installation in early 1961 Walser began the operation and sold a large quantity of gasoline. At times 25 to 30 tractor units would congregate there. Sales averaged from 75,000 to 80,000 gallons per month. Plaintiff had patronized the place regularly for several years.

The equipment received rough treatment. At one time a pump was knocked

over by a truck. The gasoline hose was 20 feet long and frequently they were abused and leaked; sometimes the nozzles too. Grubb Oil Co. replaced the hose and nozzles and procured electrical repair and paid for it.

On April 29, 1965, Stephens, plaintiff's driver on his way from the manufacturing plant in Georgia to a point in Virginia, drove his outfit up to one of these gas pumps, stopping his tractor about 4 feet from it and asked the attendant Miller to put 50 gallons of gasoline in his tractor tank. Miller later inserted the nozzle in the tractor tank, then returned to the pump where with a lever he tripped the gas register to zero, then pulled on the switch to start the pump when instantly fire arose in the bottom of the pump and spread over to the plaintiff's outfit and the flames enveloped the tractor and trailer, shooting skyward from 25 to 50 feet. The meter registered 162.4 gallons of gas pumped into the fire. The hose was burnt off of the nozzle and the glass at the top of the pump was gone, hence the gas was being pumped at the rate of 20 gallons per minute into the flames.

The theory of the case was negligent use of the electrically operated pump without exercising reasonable care as to its condition. Reasonable inspection would have disclosed exposed wiring and that the failure to exercise reasonable care under the circumstances was negligence which proximately caused the damage.

Grubb Oil Co. moved for a directed verdict as to it on the ground that it owed no duty to the plaintiff; that the negligence, if any, was that of Walser brothers; they in turn moved for a directed verdict in their favor on the ground that it was the duty of Grubb Oil Co. to inspect, repair and maintain the pumping equipment. The court reserved its rulings under Rule 50 of the Federal Rules of Civil Procedure and let the jury render its verdict. It found the issue of negligence in favor of the plaintiff and assessed its damages in the sum of $11,516.59.

On the coming in of the verdict each defendant moved to set aside the verdict and to grant their motion for a directed verdict or in the alternative to grant a new trial. These motions are denied.

The evidence was sufficient to take the case to the jury. North Carolina is a common law state and recognizes that electricity and gasoline are dangerous instrumentalities. Calhoun v. Nantahala Power & Light Co., 216 N.C. 256, 4 S.E. 2d 858; Moore v. Beard-Laney, Inc., 263 N.C. 601, 139 S.E.2d 879. In Moore v. Beard-Laney, Inc. supra, the court defines the standard of care of gasoline as follows: "We take judicial notice that gasoline is a flammable commodity. The basic duty to use ordinary care or reasonable care under the circumstances requires a person handling an inherently dangerous instrumentality or commodity, like gasoline, to use care commensurate with the known exceptional danger." In that case the delivery man permitted gas to overflow the tank and when the station owner cut off the pump switch a spark ignited the gas, resulting in a big fire and damages. The trial court ruled the evidence was insufficient and granted an involuntary non-suit. The Supreme Court reversed and ordered a trial by a jury. It also said: "A reasonable inference to be drawn from the evidence is that the gasoline overflowing from the storage tank was ignited by a spark created when Pennell cut off the electric switch on the pump which pumps gasoline in the storage tank."

Circumstantial evidence is sufficient to establish negligence when the facts proved and the reasonable inferences to be drawn therefrom make it more probable that the injury was the result of negligence. Frazier v. Suburban Rulane Gas Co., 247 N.C. 256, 100 S.E.2d 501. "Direct evidence of negligence is not required, but the same may be inferred from acts and attendant circumstances, and * * * if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury,

though the possibility of accident may arise on the evidence. * * * 'The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself.'" In that case a chicken house was destroyed by fire which an expert testified could have been caused by a leaking pipe or an accumulation of soot in the burner, either of which adequate inspection would have disclosed. A recovery in that case was sustained.

The same principles are stated in Schulz v. Pennsylvania Railroad Co., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668. There the trial court stated: "'There is some evidence of negligence, and there is an accidental death. But there is not a shred of evidence connecting the two'." A directed verdict for the defendant was affirmed by the Court of Appeals which, while conceding a doubtful proof of any negligence, said the evidence failed to show where the accident occurred or "'that it was proximately caused by any default on the part of the defendant.'" The Supreme Court, in reversing both courts and sending the case back for a trial by a jury said: "[I]t must be borne in mind that negligence cannot be established by direct, precise evidence such as can be used to show that a piece of ground is or is not an acre. Surveyors can measure an acre. But measuring negligence is different. The definitions of negligence are not definitions at all, strictly speaking. Usually one discussing the subject will say that negligence consists of doing that which a person of reasonable prudence would not have done, or of failing to do that which a person of reasonable prudence would have done under like circumstances. Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases. '[W]e think these are questions for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others.'"

There commenting on the facts in that case, the court continued: "Fair-minded men could certainly find from the foregoing facts that defendant was negligent in requiring Schulz to work on these dark, icy and undermanned boats. And reasonable men could also find from the discovery of Schulz's half-robed body with a flashlight gripped in his hand that he slipped from an unlighted tug as he groped about in the darkness attempting to perform his duties. But the courts below took this case from the jury because of a possibility that Schulz might have fallen on a particular spot where there happened to be no ice, or that he might have fallen from the one boat that was partially illuminated by shore lights. Doubtless the jury could have so found * * * but it would not have been compelled to draw such inferences. For 'The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.' Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn." "It is not the function of a court to search [the] record for conflicting circumstantial evidence in order to take [the] case away from [the] jury on [a] theory that [the] proof gives equal support to inconsistent and uncertain inferences."

Equally compelling on the court in the case at bar is Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520. In commenting on the function of the jury, it is said: "The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * That conclusion, whether it relates to negligence, causation or any other factual matter, can-

not be ignored. Courts are not free to re-weigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. \* \* Thus to enter a judgment for respondent notwithstanding the verdict is to deprive petitioner of the right to a jury trial."

█ In this case the evidence clearly shows that the fire originated down in the bottom of the pump. The pump was enclosed in a closed metal housing. Fire could not enter from the outside. Fire ensued instantaneously following pulling on the switch. A spark was created which ignited the fumes. At the time of installation an explosion proof electric motor at the top of the pump and an explosion proof junction box in the bottom of the pump and the electric wires inserted in a pipe from the motor to the junction box made it impossible for a spark or arc to be exposed. But that was four years before the fire. Although Grubb Oil Co. and Walser brothers introduced evidence concerning repair to the pumps and testing it for accuracy of the measuring device, for some inexplicable reason neither one offered any evidence of inspecting the wiring to see if four years of heavy use had altered the safety of the wiring. It is reasonable to conclude that a casual inspection would have revealed any exposed wiring or other hazards. Wouldn't a reasonably prudent person, knowing the great danger of fire if the wiring was not explosion proof, have inspected it at reasonable intervals and remedied the defects, if any, which would have prevented the fire? The jury has found that the origin of the fire was caused by the negligence of the defendants. The evidence amply supports the verdict.

█ Regardless of whether Walsers were servants of Grubb Oil Co., or lessees or tenants, the purpose of the arrangement was to promote the sales of gasoline for Grubb Oil Co. under circumstances where the general public would come in large numbers to purchase gasoline. It was incumbent on both to exercise reasonable care not to cause injury to those on the premises to purchase gasoline. The plaintiff's property was on the premises to purchase gasoline, not to get its property destroyed in a gasoline fire. Support for this view is found in Livingston v. Essex Investment Co., 219 N.C. 416, 14 S.E.2d 489; Rogers v. Gulf Oil Corp., 229 N.C. 241, 49 S.E.2d 409; Wilson v. Dowtin, 215 N.C. 547, 548, 2 S.E.2d 576; Howard v. Texas Co., 205 N.C. 20, 169 S.E. 832.

Judgment will be entered in accordance with the verdict.