MANUEL SANTOS RIVERA ET AL., Plaintiffs, Appellants, and Appellees, *v.* NELSON S. QUIÑONES DE LA ROSA ET AL., Defendants, Appellees, and Appellants.

Nos. R-63-283     Decided April 29, 1966.
R-63-285.

*Rafael Pastor* for plaintiffs, appellants, and appellees. *Riecke-hoff, Calderón, Vargas & Arroyo* for defendants, appellees, and appellants. *Héctor Martínez Muñoz* for Commercial Insurance Company.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

On April 1, 1962, there occurred an accident at kilometer 56.5 of highway No. 1, about 35 meters away from the intersection formed by Avenida Barbosa of Cayey and the road in question, as a result of which the occupants of a Plymouth vehicle operated by Juan Rivera Cintrón suffered severe

injuries, one of whom, named Wilfredo Santos Carrasquillo, died. The driver of a Pontiac vehicle and several of its occupants also suffered injuries. The accident consisted in the violent collision of these vehicles at the aforesaid place. The trial court concluded that the accident was due exclusively to the negligence of both drivers in leaving their respective lanes, thereby causing both vehicles to collide in the center of the road, and determined the degree of negligence of each at 50 percent. It determined the amount of the damages suffered by each person injured, the nature of which was stipulated by the parties, and after reducing it to one-half it held the appellees liable for the damages suffered by the occupants of the Plymouth, and the driver of the latter, appellant Rivera Cintrón, for the damages suffered by the driver of the Pontiac, Nelson S. Quiñones de la Rosa, which the latter claimed by way of counterclaim.

Feeling aggrieved, both parties appealed. The former allege that the trial court erred (1) in concluding that Rivera Cintrón "through his negligence contributed 50 percent to the accident"; (2) in applying, for the purpose of reducing their damages, the rule of comparative negligence; (3) in assessing the damages of Rivera Cintrón at only $4,000; (4) in sustaining the counterclaim of Quiñones de la Rosa; (5) in assessing at an inadequate amount the damages suffered by the other occupants of the Plymouth; and (6) in reducing them by 50 percent, since these appellants-appellees were not guilty of negligence. On the other hand, Quiñones de la Rosa alleges that the trial court erred in evaluating and weighing the evidence, and that its findings of fact do not represent the most fair and reasonable balance of the evidence submitted.

For the purposes of decision, it is necessary to make an analysis and summary of the evidence, since the case turns on whether both drivers, or only one of them, were negligent in swerving their vehicles from their respective lanes while

they were being operated in opposite directions. In its findings of fact the trial court did not make a detailed determination on the circumstances which warranted its conclusion, thereby failing to indicate any cause or reason for the movements of each one of the vehicles prior to the accident.

Rivera Cintrón testified that about 10:30 p.m., after calling on his sweetheart in Cidra, the other appellants-appellees called him from the recreation park and asked him to take them for a ride in his Plymouth; that they drove toward Caguas; that they stopped several times to take care of their bodily needs and to tell jokes; that they stopped at La Mina de Oro restaurant in order to purchase gasoline; that there they had to wait for half an hour because one of the boys went to fetch the person in charge of dispensing the gasoline; there were three or four persons also waiting and they had to take turns; that then they headed for Cayey; that the entrance to Avenida Barcelo running from highway No. 1 to Cayey, where highway No. 1 is straight, "since there have occurred accidents there, I pulled over a little to the left, almost close to the white line." Rivera Cintrón further testified that the Pontiac was coming along the favored lane until it suddenly crossed into his path; that the impact occurred within about three seconds after swerving slightly to his left; that the impact occurred on the right side, that is, in his lane. There is a slight curve in the road at that place. The witness testified that "because it is a slight curve, that is where I rounded the slight curve . . . to the left"; that he pulled over to the left, close to the line, right in front of the intersection; he saw the Pontiac about 80 meters away "travelling normally along its lane." When he was asked whether the Pontiac swerved to its left at the very moment that he pulled over to the left, he answered that "As I pulled over to the left trying to draw toward the center, it then crossed into my path." He denied that a policeman intervened in an argument between the person in charge of dispensing the

gasoline at La Mina de Oro and the witness and his companions. He did not see any policeman around there.

Félix Norberto Torres, another occupant of the Plymouth, testified that when they reached the intersection "our car pulled over to the center of the road, close to the white line, then it proceeded toward the center; it drew toward the white line and then went back to the center of the road; within three seconds the other car kept coming and crossed into the path." This witness was on the back seat of the Plymouth with three youngsters who occupied it. He testified that he looked out by the side of two of the three occupants of the front seat, between both of them; he knew that they were travelling at 45 miles because he took a look at the "speedometer shortly before the accident"; that another occupant, Julio Vega, smelled of liquor; that there were four cars at the filling station. When he was asked whether any policeman spoke with them at La Mina de Oro, he answered that "no one spoke with me at La Mina de Oro."

The mechanic who picked up the vehicles after the accident testified that the "Plymouth travelling toward Cayey came to rest on the left side. The front part slightly outside of the road." It was facing the sugarcane plantation "at a degree [sic] of 45 degrees with respect to the white line on the road." The Pontiac "was on the opposite side . . . right side going from Caguas to Cayey. The front part was then facing the left side of the road . . . Caguas to Cayey." The vehicles came to rest in opposite directions.

The photographs of the vehicles involved in the accident show that both of them were wrecked. The front of the Plymouth was completely destroyed and the entire right of the other was torn to smithereens.

Dr. González Anon testified that "From the observation, from the examination of the patients [he referred to appellants-appellees] I did not detect any evident signs nor smelled liquor in any of them; I do not recall their having breath

of alcoholic intoxication." He testified that when the degree of intoxication of a patient is evident, they (in the health center of Cayey) enter the fact in the record, and such entry did not appear. He added, however, that if they had taken one or two beers, he could not tell; that what he could say was that he did not recall, "that from their behavior none of the injured behaved as being extremely tight"; that this affirmation was based on his personal observation and not on blood or urine tests.

Rafael Rivera Vázquez, employee of the garage of La Mina de Oro restaurant, testified that appellants-appellees arrived there in a Plymouth after 11 p.m. He denied their having to wait, because there were no other vehicles there. He sold them two gallons of gasoline. He had to call policeman Maldonado because they did not wish to pay. He said that the occupants of the Plymouth some times were quiet and other times noisy. He noticed that they were drinking because "I know when a person drinks. . . . When they arrived there they started drinking right away, and the way they behaved toward each other. . . . It seems that they were at some party or were going to some party." After the policeman admonished them, they paid and left. On cross-examination he testified that he did not see them drinking; that they were drinking "by the manner, by their attitude in not wishing to pay. . . . The way they talked . . . any person who is drinking, you can tell from here to there." When he was asked if he could tell by their breath, he answered that he did. He could not say whether the driver of the Plymouth, Rivera Cintrón, was drinking.

Ángel Martínez del Valle, who was riding in the front seat of the Pontiac operated by Quiñones de la Rosa, testified that "after we passed the Cayey crossing, I would say shortly afterwards, a car with dazzling light kept coming toward us, and Quiñones [the driver of the Pontiac] said: 'Look,

Martínez, what's coming,' and I could tell by the lights that they were bearing upon me." The Pontiac was travelling along the right lane, that is, along its right-hand side, at about 45 miles per hour. He further testified that "all of a sudden we saw the automobile which came out suddenly from a slight curve, and he said that to me, 'what's going on,' and I thought right away that there was no place to swerve to because it was dark on the right side, the visibility was not good, and he decided to swerve"; that Quiñones de la Rosa slackened the speed, applied the brakes, sounded the horn, but could not stop, "he pulled over to the left and immediately I approved mentally of his decision . . . to avert it because it was bearing upon us." The Plymouth appeared at about 100 or 150 yards away. He added that the accident occurred before reaching the intersection called Avenida Barceló, coming from Cayey to Caguas.

Mariano Díaz, driver of an automobile which followed behind the Pontiac occupied by persons of the same group as the Pontiac, testified that when they reached Central Cayey he was coming at about "four or five car lengths behind . . . Quiñones"; that "I saw a vehicle with dazzling lights coming in the opposite direction along our lane . . . it was travelling quite fast because the accident occurred with such rapidity . . . something terrific. Nelson Quiñones sounded the horn." He said that both Quiñones de la Rosa and he slackened the speed; that "he [Quiñones de la Rosa] tried to avert the accident, but it was impossible and he tried to cut away . . . slightly to the left, but at that moment the other also cut away to his right and the impact occurred. . . . On the right lane, that is, on our lane . . . to the right. . . . I would say it was on the dividing white line." He testified that the Plymouth also "hit me leaving me parallel to the car of Nelson Quiñones"; that since he first saw the Plymouth and the impact, "I would say it was a matter of seconds." He added that the Plymouth came

to rest looking toward Guayama, in the right lane along which the witness was coming.

Appellee-appellant Nelson Quiñones de la Rosa testified that about an hour or an hour and a half before the accident they took one or two beers; that after passing the Cayey-Guayama crossing "but before reaching a slight curve at the entrance of Cayey, we suffered an accident . . . at the place mentioned, in the right lane. Suddenly, as I came out of the slight curve, I saw a car; I say car because what I see is two lights, along my lane. It kept coming toward me, and at that moment there is a sort of a slight upgrade, a slight elevation . . . I took the foot off the accelerator because the car was bearing down upon me, and commented: 'that man in our lane is crazy,' and just as I finished the conversation, I tried to evade the blow, trying to cut away in order to avoid the impact, and the car hit me right there." On cross-examination he testified that he saw a pedestrians' path at the scene of the accident and a car standing to his right, which he noticed after the accident. When he was asked whether its lights shed light toward the sides, he answered that they had an angle of visibility, insisted that his vehicle (the Pontiac) was struck "at an angle" and not crossed into.

Appellants-appellees allege that the theory of the accident stated by appellees-appellants is false because (1) the Plymouth came to rest on the lane of the Pontiac, its front part in the same position or direction in which the accident was going to occur, but slightly slanted in an angle; the front part slightly outside the road; (2) the damages to both cars show that the Pontiac could not be slightly slanted as it ran into the Plymouth, since in that case the dent of the former would not be deep toward the inside, as it is, but on its entire right side, and that of the Plymouth would be on its right front and not uniform on its entire front; (3) the collision could not have occurred on the lane of the

Pontiac since the latter could not have turned on an axis inside that lane and in that lane receive a deep impact toward the inside and right in its very center produced by the front of the Plymouth. If it were correct that Quiñones de la Rosa was in his lane and that as he swerved he was struck on his right side while in his lane, he would have received the impact at a slight angle on its entire right side. On the other hand, the Plymouth would not have been damaged on its entire front and would not have remained or stopped in the lane of Quiñones de la Rosa, and would have come to rest inside the sugarcane plantation or outside of the road, particularly since it was travelling at excessive speed. The Pontiac must have turned suddenly in its lane making a semicircle toward the other lane, exposing its right side at an angle of at least 45 degrees to the entire front of the Plymouth toward the latter's lane. Appellants-appellees therefore maintain that the accident had to occur in the manner described by their witnesses; that "it is much more probable that Quiñones de la Rosa committed an error of judgment" as a result of the maneuver made by the driver of the Plymouth in swerving to his left, although within his lane, dangerously pulling over to the Pontiac's lane without slackening the speed when making such maneuver, a fact which was mistakenly interpreted by the driver of the Pontiac who suddenly veered off to his left, invading in a close angle the lane of the Plymouth in the belief that the latter would invade the Pontiac's lane; that Quiñones de la Rosa was therefore solely responsible for the accident.

In our judgment, we must determine which is the more rational, fair and juridical balance of the entire evidence which does not contravene the natural order of things nor the rational order of human intelligence. *Sanabria* v. *Heirs of González*, 82 P.R.R. 851, 965 (1961).

We agree with the trial court that both drivers swerved their cars from their respective lanes. But since it made

no determination as to the reason for so doing, it is necessary that we do so in order to decide whether one or both drivers were negligent, a question which is conclusive of the parties' liability.

The evidence shows that the occupants of the Plymouth were youngsters in a festive mood; that it was noticed at La Mina de Oro that some of them had imbibed some alcoholic beverage, and one of them testified that another one of them smelled of liquor; that they committed inexactitudes in their testimony in connection with the incident of purchasing gasoline at the aforementioned place, which incident necessitated a policeman's intervention in order to appease them. In their testimony both the driver of the Plymouth and his companion were careful not to exceed the legal limits as to the operation of the vehicle along the proper side of the road and the speed limit prescribed by law. However, it is inferred from the damages suffered by the vehicles and the injuries to their occupants that one or both vehicles must have been operated at a speed far in excess of the legal limit. *Valedón* v. *Fernández*, 78 P.R.R. 246 (1955); *Efret* v. *Quiñones*, 40 P.R.R. 183 (1929). It is also inferred from the evidence that neither the Pontiac nor the other accompanying automobile was operated at excessive speed at the time of the collision; that they were operated and occupied by older, married, and responsible persons, and, on the contrary, that they slackened the speed when the Plymouth appeared along the lane in which they were travelling. We believe that under the circumstances it must necessarily be concluded that the Plymouth operated by Rivera Cintrón was the one operated at excessive speed. On the other hand, the actions of appellants-appellees, and the fact that the deviation of their vehicle occurred on a slight curve, warrant a conclusion that such deviation cut through the white line of the road, and that Quiñones de la Rosa and the other

occupants of the Pontiac and of the accompanying car actually saw the Plymouth approaching rapidly along the lane properly occupied by the Pontiac. It remains for us to decide whether in the face of this sudden emergency Quiñones de la Rosa reasonably swerved to the left, since, if he had done so to the right, perhaps he would have avoided the accident by proceeding along the shoulder of the road. Evidently, in the three seconds before the accident, the only time Quiñones de la Rosa had to decide how to avert the accident, it was reasonable, in the face of the sudden and unexpected emergency with which he was confronted, that he should not swerve to the right, since, as testified by Martínez del Valle, who was seated next to Quiñones de la Rosa in the Pontiac, "it was dark on his right, the visibility was not good, and he [Quiñones de la Rosa] decided to swerve." On the contrary, at that moment Quiñones de la Rosa could see well the road which was clear to his left. It was reasonable for him to assume, as the Plymouth approached him at great speed along the lane on which he was travelling, that he would succeed in evading it by swerving to the left but on the paved portion of the road. At that moment it was not reasonable for Quiñones de la Rosa to anticipate that the driver of the Plymouth would also swerve toward his own lane, so that, when both of them swerved, the Plymouth hit the Pontiac squarely and right through its right side. It is true that Quiñones de la Rosa said that he saw a pedestrians' path at the scene of the accident and an automobile parked on the ground to his right; but he unquestionably learned this after the accident, since he readily testified that he found out "after I went to see it." Quiñones de la Rosa's action in the face of such imminent danger, with only three seconds to avert it, should be judged in the light of those circumstances. We do not believe that in that situation the fact that he did not swerve to his right warrants an imputation of negligence. His decision at that moment of imminent

danger could not be the product of reasoned reflection. It necessarily was an instinctive reaction to draw away from the Plymouth possibly assuming that the latter would proceed on the lane along which it was travelling rapidly, or that he could pass it by the left, and perhaps because his instinct of conservation induced him to expose to the possible impact the side of the Pontiac farther from where he was seated. Perhaps it would not be the most prudent and wisest reaction and which most likely would have avoided the accident. We conclude that his reaction was the one which could reasonably be expected of a prudent driver under similar circumstances.

In *Jones* v. *Continental Casualty Co. of Chicago, Ill.*, 169 So.2d 50, 59 (La. 1964), the circumstances giving rise to the accident are very similar to the case under consideration. In *Jones, supra*, the driver of a truck saw a Chevrolet coming out of a curve, about 1,000 feet away, which was travelling at great speed in an opposite direction. He noticed about 600 feet away that it was driving in his lane; he swerved the truck slightly to the left and reduced the speed. The Chevrolet proceeded on its left. The driver of the truck thought that he had no choice, since if he swerved to the right it could hit him broadside and cause him to lose control of the truck; that by swerving to the left he was trying to pass the other by the side. The collision occurred when the Chevrolet returned to its own lane. Under these circumstances, the court concluded that the driver of the truck was confronted by a sudden emergency and that he did not contribute to the imminent peril with which he was faced when he swerved to his left; that he did not make the best judgment, but that he was not guilty of negligence for the fact alone that he made a mistake in the method adopted to escape a peril which existed, not through his fault, but through the negligence of another. See, also, *Smith* v. *Smith*, 176 So.2d 231 (La. App. 1965).

In *Forgy* v. *Schwartz,* 136 S.E.2d 668 (N.C. 1964), it was held that where the driver of an automobile is confronted with another approaching at 60 miles per hour and about 750 feet away, the latter turns into the lane along which the former was traveling so that the former only had five seconds to make a decision, such a situation creates such excitement and apprehension of impending doom in a prudent man that it may paralyze his reactions or cause him to make error of judgment. See, also, *Vreugdenhil* v. *Krunkel,* 127 N.W.2d 630 (Iowa 1964).

■ The sudden emergency doctrine has been adopted in this jurisdiction. *Banchs* v. *Colón,* 89 P.R.R. 471 (1963); *De Jesús* v. *Ayende,* 32 P.R.R. 407, 412 (1923). *Cf. Ortiz* v. *Transportation Authority,* 80 P.R.R. 227 (1958); *Matos* v. *Pabón,* 63 P.R.R. 855, 864 (1944). It is applied as a general rule in situations such as in the case under consideration. *Cupp* v. *State,* 143 S.E.2d 197 (Ga. App. 1965); *Grisamore* v. *Atchison,* 403 P.2d 93 (Kan. 1965); *McMorris* v. *Hanover Ins. Co.,* 175 So.2d 697 (La. App. 1965); *Curtis* v. *Blacklaw,* 403 P.2d 358 (Wash. 1965).

■ From the foregoing analysis it is evident that the accident in question was due exclusively to the negligence of Rivera Cintrón, driver of the Plymouth, in operating the same at excessive speed and improperly along his left. *Vargas* v. *Alers,* 69 P.R.R. 215 (1948); *Pfaffenbach* v. *White Plains Express Corp.,* 34 U.S. L. Week 2539 (decided by the Court of Appeals of New York on March 24, 1966). The purpose of diversion and the actions of the occupants of the Plymouth prior to the accident furnish additional basis for concluding that Rivera Cintrón at that moment operated the vehicle carelessly and without exercising the care required by the late evening hour, the great number of persons in the vehicle, and the intersection which they were approaching along a slight curve. In view of the sudden emergency with which

Quiñones de la Rosa was confronted, he was not negligent in swerving to his left in order to escape the accident in question.

For the reasons stated, the judgment in this case will be modified dismissing the complaint and increasing to its original $3,000 determination the damages claimed by Nelson Quiñones de la Rosa in his counterclaim, which appellant-appellee Juan Rivera Cintrón shall pay him. As thus modified, it will be affirmed.