GEORGE L. FORGY v. MRS. EVELYN K. SCHWARTZ AND HENRY BANE, ADMINISTRATOR OF THE ESTATE OF JOHN EDWARD MITCHELL, DECEASED.

AND

VIRGINIA DAVIS FORGY v. MRS. EVELYN K. SCHWARTZ AND HENRY BANE, ADMINISTRATOR OF THE ESTATE OF JOHN EDWARD MITCHELL, DECEASED.

AND

JOY LEE FORGY, BY HER NEXT FRIEND VIRGINIA DAVIS FORGY v. MRS. EVELYN K. SCHWARTZ AND HENRY BANE, ADMINISTRATOR OF THE ESTATE OF JOHN EDWARD MITCHELL, DECEASED.

AND

FORGY *v.* SCHWARTZ; KLUGERMAN *v.* SCHWARTZ; WINDERS *v.* SCHWARTZ.

ROSE KLUGERMAN v. MRS. EVELYN K. SCHWARTZ AND HENRY BANE,
    ADMINISTRATOR OF THE ESTATE OF JOHN EDWARD MITCHELL, DECEASED.
                                AND
WILLIAM R. WINDERS, ANCILLARY ADMINISTRATOR OF THE ESTATE OF NA-
   THAN SCHWARTZ, DECEASED v. MRS. EVELYN K. SCHWARTZ AND
   HENRY BANE, ADMINISTRATOR OF THE ESTATE OF JOHN EDWARD MIT-
   CHELL, DECEASED.

(Filed 12 June 1964.)

**1. Automobiles §§ 7, 15—**

    When a motorist sees, or in the exercise of ordinary care should see, another motorist approaching from the opposite direction on the wrong side of the highway, the first motorist is under duty to exercise due diligence under the conditions then existing to prevent an accident, and, when possible, to slow down, turn from a direct line, drive off the highway, stop, or take such other evasive action as a person of ordinary prudence would take under similar circumstances.

**2. Automobiles § 43—**

    Even though a head-on collision results from the negligence of one motorist in pulling to his left and traveling at excessive speed in passing preceding vehicles, a passenger may hold both drivers liable as joint tortfeasors if the second motorist fails to exercise ordinary care to avoid the accident by taking evasive action and such failure is a proximate cause of the accident.

**3. Automobiles § 19—**

    Where a motorist is confronted with a sudden emergency when a car approaching from the opposite direction pulls to its left side of the highway to pass other vehicles, such motorist will not be held to the wisest choice of conduct but only to such choice as a person of ordinary care and prudence similarly situated would have made, and the failure to take certain evasive action cannot be held for negligence when it is merely speculative whether such action would have avoided the accident.

**4. Automobiles § 43—**

    Evidence tending to show that defendant motorist was traveling at a lawful speed in her proper lane and that a driver approaching from the opposite direction turned to his left to pass a line of cars when such a short distance away and at such excessive speed that defendant had only four or five seconds prior to impact in which to take evasive action, and that in this short interval defendant applied her brakes and veered to her right, *held* insufficient to be submitted to the jury upon the theory that defendant driver failed in the exercise of ordinary care, to take evasive action to avoid the collision.

APPEAL by defendant, Mrs. Evelyn K. Schwartz, from *Sink, E.J.,* September 1963 Civil Session of DURHAM.

    These five actions, one for wrongful death and four for personal injuries, grow out of a collision between the Buick automobile operated

by John Edward Mitchell, the intestate of defendant Henry Bane, and a Mercury station wagon operated by the defendant Mrs. Evelyn K. Schwartz and owned by her husband, the intestate of plaintiff William R. Winders. The cases were consolidated for trial in the Superior Court and for this appeal. Each plaintiff recovered a substantial judgment against both defendants. The defendant Schwartz appealed and assigns as error, *inter alia*, the denials of her motion for nonsuit made at the close of plaintiff's evidence and renewed at the close of all the evidence. The evidence, viewed in the light most favorable to the plaintiffs, tends to establish the following facts:

On November 1, 1959 about 6:00 p.m., Mrs. Schwartz was operating her husband's station wagon in a northerly direction on U. S. Highway #401 between Fuquay Springs and Lillington. The weather was clear and "there was still a good bit of day light left." Some cars had lights on; some did not. Mr. Schwartz was asleep in the front seat beside his wife. The plaintiff George L. Forgy was seated in the second seat immediately behind the driver. On his right was his wife, the plaintiff Virginia Davis Forgy. Sitting next to her was Mrs. Schwartz' mother, Mrs. Rose Klugerman, also asleep. Behind the second seat, asleep on the floor was the plaintiff Joy Lee Forgy, the ten-year-old daughter of the Forgys.

Seven miles north of Lillington the station wagon was involved in a collision with the automobile of defendant Bane's intestate, Mitchell. At the point of collision U. S. 401 was a level, two-lane highway with a center line separating the north and south travel lanes. The paved portion of the road was twenty-four feet wide, eighteen feet of cement with a three-foot wide strip of asphalt on each side. The shoulders were dirt with a grass overlay. The east shoulder was at least eight feet wide. Beyond it was a ditch one to two feet deep and about two and a half feet wide. Beyond the ditch was a small embankment. To the south the road was straight for about one third of a mile; one hundred feet to the north there was a slight curve. A drainage culvert went under the road in the vicinity of the accident.

The station wagon was six feet, six inches wide. It was meeting several automobiles which were traveling south. Mr. and Mrs. Forgy testified that they first observed the Mitchell Buick seven hundred and fifty feet away when it pulled out from behind these cars on the curve into the center of the highway. At that time the station wagon was traveling about fifty miles per hour in the center of the lane for northbound traffic. Mitchell was traveling in excess of sixty miles per hour — possibly seventy-five miles per hour. "He was traveling." His Buick had a cutout on the motor.

According to plaintiff George Forgy, Mrs. Schwartz immediately applied her brakes and he felt "some sensation of the car slowing down" but none of skidding. Mrs. Schwartz said, "He is going to hit us; he has got no place to go. . . . When Mrs. Schwartz made the statement, I turned around to check my daughter who was behind me in the back of the station wagon and then turned back and told my wife he was going to hit us, 'try to relax,' and I turned around and watched the car hit us. It was five to six seconds from the time I first saw the oncoming car until the time of the impact between the two cars. . . . At the time of the impact, it is my opinion that the speed of the station wagon was between 40 and 45. . . . Mrs. Schwartz applied her brakes only and continued right straight on the highway . . . No wheel of the station wagon went onto the dirt shoulder of the highway. From the point where I first observed the oncoming car to the point of impact was 270 feet . . . At the moment of the impact the two automobiles went up in the air and our automobile went backwards along the line of travel . . . The station wagon came to rest with the front wheel on the shoulder and the two rear wheels still on the pavement of the highway."

Mitchell and his companion were killed instantly. All the occupants of the station wagon were seriously injured. The appealing defendant's husband, Nathan Schwartz, died eleven days later as a result of the injuries he sustained. He was survived by his wife, his mother, a brother and a sister. He had no children.

Each car was damaged on its left front. The patrolman who arrived at the scene at 6:15 p.m. measured twenty-two feet of black tire marks in the northbound lane beginning two feet from the center line and ending five feet from it. From that point scuff marks extended forty-five feet in a southeasterly direction to the wrecked station wagon which was then headed southeast. The Buick was sitting sixty-two feet from the beginning of the scuff marks. It was headed south in the southbound lane directly in the line of traffic. The odor of alcohol was in the Buick and in the air about its occupants.

On September 5, 1963, Mr. and Mrs. Forgy went to the scene of the accident with an engineer and pointed out to him the spot where the collision occurred, where the Mitchell car was when they first observed it crossing the center line, and where the station wagon was at that time. According to the engineer's measurements, the Mitchell car traveled four hundred and sixty-six feet while the Schwartz vehicle went two hundred and seventy feet to the point of collision, a total distance of seven hundred and thirty-six feet. On an adverse examination held in March 1961, Forgy said with reference to the distance at which he

first saw the Mitchell car, "(W)ell now, distances are pretty hard to judge at night that way, but I would say it was at least 600 feet."

Upon this evidence the judge submitted the cases to the jury.

*Bryant, Lipton, Bryant & Battle for plaintiff appellees.*

*Maupin, Taylor & Ellis for Evelyn K. Schwartz, defendant appellant.*

SHARP, J.    That the reckless driving of defendant Bane's intestate, John Edward Mitchell, proximately caused the head-on collision between the Buick and the Schwartz station wagon is not contested. The question is whether there is any evidence tending to show that defendant Schwartz, by the exercise of reasonable care, could have avoided the consequences of Mitchell's negligence after he drove his automobile into her lane of travel. A motorist, although in his proper lane, has the duty to avoid colliding with another vehicle which comes into his path from the opposite direction if he can do so in the exercise of due care. From the time the motorist sees, or in the exercise of ordinary care should see, that the approaching driver cannot or will not return to his side of the road, it is encumbent upon him to exercise due diligence under the conditions then existing to prevent an accident. *Henderson v. Henderson,* 239 N.C. 487, 80 S.E. 2d 383. When possible, it is his duty to slow down, turn from a direct line, drive off the highway, stop, or take such other evasive action as a person of ordinary prudence would take under similar circumstances to avoid a collision. If he neglects to do so, and such failure is a contributing cause of the resulting collision, he is liable as a joint tort feasor to those who are injured as a consequence of his negligence. *Jones v. Atkins Co.,* 259 N.C. 655, 131 S.E. 2d 371; *Redden v. Bynum,* 256 N.C. 351, 123 S.E. 2d 734; *Johnson v. Lewis,* 251 N.C. 797, 112 S.E. 2d 512; *Taylor v. Rierson,* 210 N.C. 185, 185 S.E. 627. *Kapla v. Lehti,* 225 Minn. 325, 30 N.W. 2d 685; 8 Am. Jur. 2d, *Automobiles and Highway Traffic* § 762.

The appealing defendant, Mrs. Schwartz, proceeding in her proper lane of travel at a lawful rate of speed, was suddenly confronted by an emergency caused solely by the gross negligence of Mitchell. Her conduct, therefore, must be evaluated in the light of the rule that one who is required to act suddenly in an emergency, without opportunity to reason or to reflect, is not held by the law to the wisest choice of conduct but only to such choice as a person of ordinary care and prudence similarly situated would have made. *Cockman v. Powers,* 248 N.C. 403, 103 S.E. 2d 710; *Patterson v. Ritchie,* 202 N.C. 725, 164 S.E. 117; 60 C.J.S., *Motor Vehicles* § 257. The law recognizes that the sud-

den appearance of an automobile, speeding toward a driver in his lane of travel, will create such excitement and apprehension of impending doom in the ordinary prudent man that it may paralyze his reactions or cause him to make an error of judgment. 7 Am. Jur. 2d, *Automobiles and Highway Traffic* § 359. "Some allowance must be made for the excitement of the moment and strain on the nerves." *Crowe v. Crowe,* 259 N.C. 55, 129 S.E. 2d 585. When "the unexpected occurs, time must be allowed a driver put in peril without his fault to appreciate the danger and form a judgment of how to meet it." *Torbert v. Smith's Estate,* 250 Mich. 62, 229 N.W. 406.

. The cases reveal that motorists who have been confronted by an automobile approaching in the wrong lane have, on occasions, (1) continued straight ahead, (2) turned to the right, (3) turned to the left, and (4) stopped. 8 Am. Jur. 2d, *Automobiles and Highway Traffic* §§ 763-766. A lengthy annotation, *Collision — Approaching Car — Wrong Lane,* 47 A.L.R. 2d 6, collects the cases. In applying the doctrine of sudden emergency, the courts have not been inclined to weigh in "golden scales" the conduct of the motorist who has acted under the excited impulse of sudden panic induced by the negligence of the other motorist.

In *Hoehne v. Mittelstadt,* 252 Wis. 170, 31 N.W. 2d 150, the defendant, driving on his proper side of the road on a foggy morning, was suddenly confronted in his lane of travel by the automobile of one Orlich approaching from the opposite direction and attempting to pass a truck. Orlich drove farther to his left; defendant continued straight ahead and struck the right front of the Orlich vehicle. Plaintiffs, passengers in the Orlich car, argued that defendant had two and a half seconds in which to slow down and if he had done so Orlich would have made it into the ditch and averted the accident. On these facts the court said: "We think that the emergency rule when properly applied must likewise excuse inaction on the part of the innocent driver in his proper lane of traffic when suddenly confronted with an automobile on the wrong side of the road." This statement was quoted with approval in *Griffy v. Havey,* 201 F. 2d 501 (7th Cir.) and in *Feinsinger v. Bard,* 195 F. 2d 45 (7th Cir.). In the latter case, plaintiff, a passenger in the car of W, was injured in a head-on collision which occurred when the automobile of B came into W's lane of travel on a snow-covered highway. Plaintiff sued the estates of both drivers. He testified that the car of B was first seen approaching in the wrong lane when it was about seven hundred feet away and traveling "a good deal faster" than the car of W. Thereafter, neither B nor W ever veered from a straight course, and W never applied his brakes. Seven seconds elapsed before the collision. In reversing a judgment against W, the court

said: "In the first place, there is a presumption that the deceased Wedell exercised due care and caution for his own safety. . . . If there was any negligence on his part, it must have been as to control and management and not as to lookout. . . . It is argued that during that time he could have applied his brakes or he could have turned either to the left or to the right. As to whether the collision could have been avoided by following any of such suggestions is purely a matter of guess and speculation." However, in appraising W's situation the court took into consideration one factor which is not present in the instant case. W had the right to assume that the B car would return to its proper side of the road. Here, Mitchell was passing a line of cars and there is evidence that he did not have any "place to go."

According to the estimates of the Forgys, Mrs. Schwartz had a maximum of only five or six seconds in which to form a judgment and take evasive action. She probably had less than five seconds.

It is rarely safe to predicate negligence solely on a strict mathematical computation of time, distance, and rate of speed for the problems of human conduct cannot be solved by reference to a slide rule. This is especially true when, as here, the measurements upon which they are based were made almost four years after the accident. The initial observations and estimates of the persons involved were necessarily made under great stress and apprehension — despite Mr. Forgy's measured description of his activities during the seconds which intervened between his discovery of the peril and the moment of collision. However, for the purpose of passing on the motion for nonsuit here, they must be considered as accurate.

Whether Mitchell appeared in the northbound lane six hundred feet or seven hundred and fifty feet from the Schwartz automobile he was driving at a speed in excess of sixty miles per hour — possibly at seventy-five miles per hour. He made no effort to slow down but Mrs. Schwartz, traveling at fifty miles per hour, applied her brakes and perhaps slowed to forty or forty-five miles per hour. Mathematically, between four and five seconds only could have elapsed. At seventy miles per hour a vehicle goes one hundred and three feet per second; at forty-five miles per hour, sixty-six feet a second. Hence, taking the median speeds, the distance separating the two vehicles was being closed at approximately one hundred and sixty-nine feet per second. Under either of Mr. Forgy's estimates of distance, Mrs. Schwartz had a maximum of five seconds in which to form a judgment and take evasive action. She probably had as little as four.

One textwriter has said, "The instinctive reaction of a motorist meeting another motorist approaching on the wrong side of the road is to apply his brakes." 8 Am. Jur. 2d, *Automobiles and Highway Traffic* §

766. Barnhill, J. (later C.J.), said in *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337: "It is a human instinct when a collision is impending between two vehicles to turn or cut away from the other vehicle." The evidence is that Mrs. Schwartz did both. The witnesses testified that she applied brakes. The skid marks on the highway, those "physical facts which speak louder than some of the witnesses," *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88, show that she also turned to the right. Plaintiffs complain that she did not turn quickly enough but, considering the acute emergency which faced her, who can say that she failed to exercise ordinary care in the operation of her vehicle during the four to five seconds which determine the destiny of this case?

It may have been that Mrs. Schwartz could have driven farther to the right faster than she did; that at the same time she should have applied brakes with more force; or that she straightway should have "taken to the ditch." However, the faster a car is going the greater the risk that a sharp turn will upset it. We do not judge her conduct by hindsight, nor can we say that less disastrous consequences would have resulted had she driven off the pavement at fifty miles per hour. In any event, she was headed off the road when time and distance ran out on her.

If we were to concede both a delayed reaction and an error of judgment on the part of Mrs. Schwartz when she was suddenly brought face to face with unexpected danger, it is our opinion that her conduct in the acute emergency did not constitute actionable negligence. The evidence fails to show that an ordinary prudent person would have reacted more quickly or used better judgment under the same circumstances. *Jones v. Atkins Co., supra; Patterson v. Ritchie,* 202 N.C. 725, 164 S.E. 117. The defendant Schwartz' motions for judgment as of nonsuit should have been allowed.

The judgments of nonsuit eliminate the questions which would have arisen in the action of Winders, Administrator of Nathan Schwartz, had he made out a case of actionable negligence against Mrs. Schwartz for the pain and suffering and the wrongful death of his intestate. As his widow, the defendant Schwartz is the chief beneficiary of his estate. G.S. 29-14(3). These questions were not raised by either party, but had she shared the responsibility for his injuries and wrongful death the law would not permit her enrichment by her own negligence. *Dixon v. Briley,* 253 N.C. 807, 117 S.E. 2d 747; *Davenport v. Patrick,* 227 N.C. 686, 44 S.E. 2d 203; *Pearson v. Stores Corporation,* 219 N.C. 717, 14 S.E. 2d 811; *Davis v. R. R.,* 136 N.C. 115, 48 S.E. 591.

The judgments are

Reversed.