LARRY EUGENE SINK, BY HIS NEXT FRIEND, EDWIN T. PULLEN, III, v. WILLIAM MOORE, JAMES D. FELTON AND WIFE, KATIE H. FELTON

AND

LOUISE A. HALL v. WILLIAM MOORE, JAMES D. FELTON AND WIFE, KATIE H. FELTON.

(Filed 25 May, 1966.)

**1. Animals § 3—**

 In the absence of municipal ordinance, the owner of a dog is not required to keep him under restraint unless the animal is vicious or a menace to the public health, G.S. 106-381, and testimony that a dog on several occasions fought with other dogs in the neighborhood and that he frequently dashed into the street to bark at and pursue vehicles, is not evidence of a vicious propensity within the meaning of the statute, nor is it sufficient to invoke the common law rule imposing liability upon the owner for injuries inflicted by a dangerous, vicious, mischievous, or ferocious animal when the owner knows or should know of the animal's vicious propensity.

**2. Same—**

 The exclusion of testimony that the dog in question had a bad reputation as an ill-tempered dog is not error when it appears that the testimony was based entirely upon the witness's observations of the dog and not on the dog's reputation in the community.

**3. Automobiles § 41m—**

 Evidence tending to show that a dog had the habit of chasing vehicles upon the street abutting the owner's property, without sufficient evidence to show that the dog had a vicious propensity known to the owner, and that the dog ran after a boy on a bicycle, barking, but not growling or snapping, *is held* insufficient to support an issue of negligence of the owner in causing an accident occurring when the boy, thus distracted by the dog, ran into the side of an automobile at an intersecting street.

**4. Same— Evidence held insufficient on issue of negligence of motorist in colliding with bicycle ridden across intersection into side of car.**

 The evidence tended to show that a motorist was driving some 25 miles per hour and within the speed limitation, that as he approached a street making a "T" intersection to his left he saw a 14 year old boy riding a bicycle with a dog three or four feet behind the bicycle, without anything to put him on notice that the dog was chasing the bicycle or that the boy was afraid of the dog, that when he observed the boy pedalling rapidly, he

drove his automobile entirely off the pavement onto the shoulder on his right, and that the boy rode past a stop sign and straight through the intersection and ran into the side of the automobile when all four of its wheels were off the pavement. *Held:* The evidence is insufficient to be submitted to the jury on the issue of the motorist's negligence, since the motorist is not charged with the duty of anticipating that the boy would continue straight across the intersection without turning.

**5. Same—**

The evidence tended to show that a boy on a bicycle, approaching along a street making a "T" intersection to a motorist's left, rode across the intersection and into the side of the motorist's car after it had turned to the right and had its four wheels on the right shoulder. *Held:* The failure of the motorist to sound his horn in the emergency cannot constitute a proximate cause of the accident when the boy would not have had time to alter his course even if a horn had been sounded.

**6. Automobiles § 19;    Negligence § 14—**

A person without fault in creating an emergency may not be held to the wisest choice of conduct, but only for his failure to take those measures which a reasonably prudent man, faced with like emergency, would have taken.

MOORE, J., not sitting.

APPEAL by plaintiffs from *Lupton, J.*, 11 October 1965 Session of FORSYTH.

These are two actions, consolidated for trial, which arise out of a collision on 26 June 1962 at the intersection of Hannaford Road and Vest Mill Road, outside the city of Winston-Salem, between a bicycle ridden by Larry Eugene Sink and an automobile driven by William Moore. The plaintiff Louise A. Hall is the mother of the plaintiff Larry Eugene Sink. Larry was 14 years of age at the time of the collision. His father is deceased. Larry sues on account of serious personal injuries alleged to have been sustained by him as a result of the collision. His mother sues for medical, hospital and nursing expenses incurred by her as a result of Larry's injuries and for loss of his services.

The allegations of the two complaints are the same as to how the collision occurred. In summary they are:

Larry was riding his bicycle in an easterly direction on Hannaford Road, approaching its intersection with Vest Mill Road. A dog owned by Mr. and Mrs. Felton suddenly ran out from their front yard and began to chase Larry, barking, growling and snapping at him. Mr. Felton was then in his front yard. While Larry was distracted, in fear of the dog, his bicycle collided with the automobile of William Moore. The Feltons were negligent in that, although they knew the dog was in the habit of chasing children on bicycles

and other vehicles, they neglected to confine the dog to their premises or to restrain him after seeing him chasing Larry. Moore was negligent in that he drove his automobile at a speed in excess of 35 miles per hour in this residential district, failed to decrease his speed in approaching and crossing the intersection, failed to keep a proper lookout, failed to yield the right of way to Larry, failed to sound his horn when he saw, or should have seen, that Larry was confused by the dog's chasing him, and failed to bring his automobile to a stop so as to avoid colliding with the boy. Moore had the last clear chance to avoid the collision. The negligence of the Feltons concurred with that of Moore as a proximate cause of the collision.

In their respective answers the defendants deny they were negligent and allege contributory negligence by Larry in that he operated his bicycle into the intersection without keeping a lookout and in violation of a duly erected stop sign.

At the conclusion of the evidence offered by the plaintiffs, each defendant moved for a judgment of nonsuit and each such motion was allowed. From such judgment the plaintiffs appeal, assigning as error the allowance of the said motion and the ruling of the court sustaining the objections of the defendants to proposed testimony of the witness W. D. Stancil, who lives in the vicinity, to the effect that the "general character and reputation of the dog in this community as of June 26, 1962" was bad, he being known "as an ill-tempered dog."

The evidence offered by the plaintiffs, in addition to that relating to the nature and extent of Larry's injuries and the amount of medical, hospital, drug and nursing expenses incurred, may be summarized as follows:

The collision occurred in a residential area at approximately 6:50 p.m., 26 June 1962, at which hour it was daylight. Hannaford Road and Vest Mill Road intersect in a "T," Vest Mill Road being the top of the "T." Hannaford Road is 26 feet wide. There is erected upon it a stop sign 23 feet from the intersection. Looking south from the stop sign, one can see 500 to 700 feet down Vest Mill Road. Between this sign and the corner there was an ornamental brick wall and some shrubs, all about two feet high.

Following the collision the Moore automobile was in the ditch on the east or far side of Vest Mill Road. There was a hole in the left side of the windshield. The rear of the automobile was a few feet past the north line of Hannaford Road, extended. Moore had been driving north on Vest Mill Road. Tire tracks leading to both rear wheels were visible upon the grass shoulder, the right track running upon the shoulder for 91 feet and the left track for 47 feet. The right and left tracks ran upon the shoulder for approximately

68 feet and four feet, respectively, before reaching the south line of Hannaford Road, extended. The shoulder was four or five feet wide and was thickly grown with honeysuckle and grass. To the right of the shoulder was a drop-off and a wooded area.

Moore was driving 30 to 35 miles an hour. His two small children were with him. He veered to the right in an effort to miss the bicycle, which did not stop but came straight across the intersection and struck the left door of the automobile near the windshield. Larry fell back upon the pavement, blood being found slightly south and east of the center of the intersection.

The Felton's little dog, Corky, came from their yard as Larry passed on his bicycle and chased the bicycle at its rear wheel on its right (south) side. He was just barking. There was no evidence to support the allegation in the complaint that he was growling and snapping at Larry. Larry looked back at the dog and kicked at him. It appeared that Larry was intending to turn to the right at the intersection. He increased his speed when the dog started to chase him. He did not stop or change his speed as he went past the stop sign and into and across the intersection to the point of collision. A witness, approximately 125 feet from the point of the collision, did not hear a horn blow or an automobile skid.

Corky "is just a little mutt," approximately a foot high. Prior to this occasion he had been observed to chase trucks, motorcycles or other vehicles moving with a loud noise along the street, running and barking behind the vehicle. Customarily, he was not penned or tied but stayed "pretty close" to the two small Felton boys. He was never known to be vicious among children or to snap at or harm a child.

The witness W. D. Stancil, who lived in the neighborhood, had observed Corky chasing his automobile on a few occasions and barking at it. He had not seen Corky do anything with regard to other vehicles prior to this collision. Had this witness been permitted to answer counsel's question as to the "general character and reputation of the dog in this community," he would have testified that the dog's reputation was bad, that he was known as an ill-tempered dog and that on several occasions he had fought with the Stancil dog and other dogs in the neighborhood.

Mr. and Mrs. Felton stated to Mr. and Mrs. Hall that Corky had chased bicycles and cars before this occurrence. Both families live in this neighborhood. The plaintiffs offered no evidence to support their allegation that Mr. Felton was in his front yard at the time of this occurrence, or that either of the Feltons knew that Corky was chasing Larry and the bicycle.

Moore saw Larry as Larry was just approaching the intersection. The dog was then about three or four feet behind the bicycle

and Moore did not know whether he was chasing the bicycle or not. He did not see the dog thereafter. He left the road to avoid the collision. Larry was pedalling the bicycle fast. After Moore left the road and went onto the shoulder Larry came straight into his car. All four wheels of the automobile were then off the pavement on the right side of the road. Moore did not sound his horn or slow down before reaching the intersection. He did not have time to apply his brakes.

*Deal, Hutchins and Minor for plaintiff appellants.*
*Womble, Carlyle, Sandridge & Rice by Irving E. Carlyle and Allan R. Gitter for defendant appellee William Moore.*
*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by R. M. Stockton, Jr., and J. Robert Elster for defendant appellees James D. Felton and wife, Katie H. Felton.*

LAKE, J.  The scene of this occurrence was in a residential area outside the limits of the city of Winston-Salem. Consequently, no city ordinance requiring dogs to be kept under restraint is involved. G.S. 106-381 provides that "when an animal becomes vicious or a menace to the public health," its owner may not permit the animal to leave the premises on which it is kept unless it is on a leash and in the care of a responsible person.

There is in this record no evidence that the little dog, Corky, was either vicious or a menace to the public health. On the contrary, the evidence is that he had never been known to snap at or bite a child or any other person. He stayed "pretty close" to the two small Felton boys. He was "just a little mutt" about a foot high. There was testimony that, on occasion, he fought with other dogs in the neighborhood, apparently with success. Had the witness Stancil been permitted to testify as to Corky's reputation in the community, he would have said that he saw Corky, on several occasions, fighting with his dog and other neighborhood dogs, and that on these occasions, when Mr. Stancil went out to break up the fight, Corky would tend to stand his ground and growl while the other dogs would spread out. Canine courage in a contest for the championship of the neighborhood, together with determination to remain in possession of the field of battle "whence all but him had fled," is not evidence of a vicious character within the meaning of this statute. There is no evidence that Corky ever indicated an intent to attack Mr. Stancil.

The only other charge of misconduct brought against Corky, prior to the occasion in question, is that he frequently dashed into the street to bark at and pursue motorcycles, automobiles and other

noisy vehicles. Such a habit is not sufficient to justify classifying him as a "vicious" animal. It does not make him "a menace to the public health," though it considerably reduces his own life expectancy. In *State v. Smith*, 156 N.C. 628, 72 S.E. 321, Walker, J., said, "A dog is like a man in one respect, at least — that is, he will do wrong sometimes; but if the wrong is slight or trivial, he does not thereby forfeit his life." Earlier, Gaston, J. said, in *Dodson v. Mock*, 20 N.C. 282:

> "That the plaintiff's dog on one occasion stole an egg, and afterwards snapped at the heel of the man who had hotly pursued him *flagrant delicto* — that on another occasion he barked at the Doctor's horse, and that he was shrewdly suspected in early life to have worried a sheep — make up a very catalogue of offenses not very numerous nor of a very heinous character. If such deflections as these from strict propriety be sufficient to give a dog a bad name and kill him, the entire race of these faithful and useful animals might be rightfully extirpated."

Since G.S. 106-381 does not apply and there is no city ordinance involved, the liability, if any, of the defendants Felton must be determined by the rule of the common law applicable to the owner or keeper of a dog. At common law the presence of a dog, not vicious, on a street or highway is not wrongful. 4 Am. Jur. 2d, Animals, § 115. In *Plumidies v. Smith*, 222 N.C. 326, 22 S.E. 2d 713, the plaintiff was a 12 year old boy who, while delivering newspapers, was bitten by the defendant's large Saint Bernard dog. Stacy, C.J., speaking for the Court, said:

> "To recover for injuries inflicted by a domestic animal, in an action like the present, two essential facts must be shown: (1) that the animal was dangerous, vicious, mischievous, or ferocious, or one termed in law as possessing a vicious propensity; and (2) that the owner or keeper knew or should have known of the animal's vicious propensity, character and habits."

In *Hill v. Moseley*, 220 N.C. 485, 17 S.E. 2d 676, the suit was brought for injuries sustained by a boy attacked by the defendant's vicious bull. Seawell, J., speaking for the Court, said:

> "The evidence of vicious propensity must be unequivocal. But we are not required to explore the psychology of the bull — if he has any — to determine whether his intentions are amiable or malicious. The propensity is vicious if it tends to harm, whether manifested in play or in anger, or in some out-

break of untrained nature which, from want of better under-standing, must remain unclassified."

The word "mischievous" as used in this rule of the common law does not connote a mere playful canine trickster. It connotes con-duct "producing or tending to produce mischief or harm; injurious; deleterious; hurtful." The Century Dictionary; Webster's New In-ternational Dictionary, Second Edition. See *State v. Smith, supra; Spring Co. v. Edgar,* 99 U.S. 645, 653. On the other hand, if the habit of the dog is one which is likely to cause injury, it is immaterial that the dog was playing. Thus, where a large dog jumped up on an old man walking along a highway and knocked him to the ground, the owner, knowing of the dog's disposition to such conduct, was held liable in *Crowley v. Groonell,* 73 Vt. 45, 50 Atl. 546. Similarly, in the days of horse drawn vehicles, there was obvious danger that a dog running about the horse, barking ferociously and snapping and biting at the horse's legs, might cause the horse to run away and in-jure the occupants of the vehicle. See: *Harris v. Fisher,* 115 N.C. 318, 20 S.E. 461; *Schmid v. Humphrey,* 48 Iowa 652; *Broderick v. Higginson,* 169 Mass. 482, 48 N.E. 269; *Knowles v. Mulder,* 74 Mich. 202, 41 N.W. 896; 4 Am. Jur. 2d, Animals, § 115; Annot., 11 A.L.R. 270.

The test of the liability of the owner of the dog is, therefore, not the motive of the dog but whether the owner should know from the dog's past conduct that he is likely, if not restrained, to do an act from which a reasonable person, in the position of the owner, could foresee that an injury to the person or property of another would be likely to result. That is, the liability of the owner depends upon his negligence in failing to confine or restrain the dog. The size, nature and habits of the dog, known to the owner, are all circumstances to be taken into account in determining whether the owner was negli-gent.

There is no evidence that either Mr. or Mrs. Felton saw the dog run out after Larry's bicycle. There is no evidence that the dog came in contact with the bicycle or with Larry. There is no evidence that he bit or snapped at Larry or at the bicycle, or attempted to do so. There is no evidence that Larry, who lived in the neighbor-hood, was afraid of this dog. The evidence is that prior to this ac-cident he was a normal boy nearly 15 years of age. It may not rea-sonably be inferred from the plaintiff's evidence that Larry was frightened or contemplated an attack. The evidence is equally con-sistent with the view that Larry was playing and enjoying the race. In this respect, the case differs from *Ethridge v. Nicholson,* 80 Ga. App. 693, 57 S.E. 2d 231. There, the plaintiff, a girl whose age does

not appear from the report, alleged in her complaint that she was, while riding her bicycle, attacked by the defendant's "large, vicious German police dog," that the dog was barking and indicating his intention to attack, bite and injure her and she, believing he would do so, gave her sole attention to him and ran into an obstruction in the street. The question arose on a demurrer to the complaint so that these allegations were taken to be true. Furthermore, there was, in that case, an ordinance in effect forbidding owners of dogs to allow them to run at large in the streets. The overruling of the demurrer by the Georgia Court is not authority for the proposition that, upon the facts in the present case, the owners of this small dog should be held liable.

Considering the size of the dog and his established lack of viciousness, we think his propensity for chasing automobiles and other noisy vehicles was not sufficient to cause a reasonable owner to apprehend injury to another unless the dog was confined to a pen or restrained by a leash.

Upon a motion for judgment of nonsuit, the evidence must be taken in the light most favorable to the plaintiff and every reasonable inference of fact favorable to him must be drawn therefrom. *Raper v. McCrory-McLellan Corp.*, 259 N.C. 199, 130 S.E. 2d 281. However, when so considered, the evidence in this case is not sufficient to support a finding of a "vicious propensity" on the part of the dog.

There was no error in sustaining the objection to the proposed testimony by the witness Stancil that Corky had a bad reputation "as an ill-tempered dog." In an action of this nature the reputation of the animal is admissible as evidence that the owner knew of its disposition and propensities. *Hill v. Moseley, supra;* Stansbury, North Carolina Evidence, § 109. However, the proper foundation was not laid for the question as to the dog's reputation. The witness was not asked whether he knew that reputation. The record shows that if he had been so asked he would have stated that his testimony was based entirely upon his own observation of the dog's actions and not upon what anyone else said. This witness, as others, could properly testify as to what he had seen the dog do, but this is not evidence of the dog's reputation in the community. It is evidence of the dog's habits, disposition and character. Had the proposed testimony been received in evidence, it would simply have shown that the dog, in this witness' opinion, was ill-tempered because he fought with other dogs in the neighborhood. The witness would have testified that he had never heard of Corky's biting or snapping at any child. "Knowledge that a dog is ferociously disposed toward other

352 IN THE SUPREME COURT.IN THE SUPREME COURT. [267

Sink v. Moore and Hall v. Moore.Sink *v.* Moore and Hall *v.* Moore.

animals is ordinarily not notice that it will attack persons." 4 Am. Jur. 2d, Animals, § 95.

The plaintiff's evidence also fails to show negligence by the defendant Moore in the operation of his automobile.

Moore was driving 35 miles per hour, which was not in excess of the maximum speed limit. He was approaching a "T" intersection, proceeding along the top of the "T." The intersection was protected by a stop sign on the other street. He had his two children, two and three years of age, respectively, in the car with him. To bring his automobile to a sudden stop would seriously jeopardize their safety. He saw a 14 year old boy riding a bicycle and a dog three or four feet behind the bicycle. There is nothing to suggest that Moore should have known the dog was chasing the bicycle or that the boy was afraid of it. The scene confronting Moore was consistent with that of a normal 14 year old boy followed by his own dog. At that point there is nothing to indicate that Moore should have anticipated that the boy on the bicycle would continue straight across the "T" intersection without turning one way or the other into Vest Mill Road. When he observed the boy pedalling rapidly, Moore pulled his automobile entirely off the pavement onto the shoulder and the collision occurred when all four wheels of the Moore vehicle were off the pavement. The shoulder was approximately the width of the car. Had the bicycle not struck the car, it would certainly have gone across the shoulder, over the drop-off and into the wooded area beyond Vest Mill Road. We can only conjecture as to what injuries Larry would have sustained in that event.

Had Larry turned to the left or to the right on Vest Mill Road, he would not have struck the Moore vehicle. Moore's failure to blow his horn after it became apparent that Larry would not turn in either direction could not have been a proximate cause of the collision for there was then not sufficient time for Larry to alter his course and avoid the collision.

Moore was acting in an emergency not created by his own conduct. In such a situation he is not required to exercise precautions which calm, detached hindsight suggests might have been taken. He may not be held liable for failure to take those measures unless it can be said that a reasonable man faced with a like emergency would have done so. *Forgy v. Schwartz,* 262 N.C. 185, 136 S.E. 2d 668. As in the *Forgy* case, "The evidence fails to show that an ordinary prudent person would have reacted more quickly or used better judgment under the same circumstances."

Since the evidence of the plaintiffs fails to show actionable negligence by any of the defendants, we do not reach the question of

whether their evidence leads to the sole conclusion that the plaintiff Larry Sink, by his own negligence, contributed to his injuries. He has been grievously injured and the evidence indicates that these injuries are permanent in nature. However, the evidence does not disclose any basis for imposing upon any defendant liability for those injuries or for the resulting loss to his mother. Consequently, there was no error in granting the several motions for judgment of nonsuit.

Affirmed.

MOORE, J., not sitting.