CECIL C. HOLCOMB v. COLONIAL ASSOCIATES, L.L.C., AND JOHN OLSON

No. 581A02

(Filed 25 June 2004)

**1. Animals—vicious—negligence—strict liability—owner or keeper**

The Court of Appeals erred in a negligence (premises liability) case by concluding that defendant landlord could not be liable for the actions of its tenant's dogs who attacked a third party unless defendant was the owner or keeper of the dogs, because: (1) the fact that a strict liability cause of action is recognized against owners and keepers of vicious animals does not preclude a party from alleging negligence against a party who may or may not be an owner or keeper of an animal; and (2) plaintiff was not required to show defendant was an owner or keeper of the dogs in order to show that defendant was negligent.

**2. Animals; Premises Liability–tenant's dogs–landlord's duty to third parties–instructions**

The trial court did not err in a negligence case arising from a tenant's dogs attacking a third party by instructing the jury regarding defendant landlord's duty, because: (1) a party need not be an owner or a keeper of an animal to be liable for negligence based on injuries caused by that animal; and (2) the landlord and tenant contractually agreed that the landlord would retain control over the tenant's dogs, and the pertinent lease provision gave defendant and its management company sufficient control to remove the danger posed by the tenant's dogs.

**3. Agency—independent contractor—degree of control**

The trial court did not err in a negligence case arising from a tenant's dogs attacking a third party by instructing the jury that the rental property management company, although an indepen-

HOLCOMB v. COLONIAL ASSOCS., L.L.C.

[358 N.C. 501 (2004)]

dent contractor, could be found by the jury to be defendant land-lord's agent with respect to the dogs, because: (1) although ordinarily an independent contractor cannot be an agent, whether an independent contractor is an agent in certain instances depends upon the degree of control exercised by the person or entity who hired the independent contractor; and (2) defendant possessed control over the management company with respect to the dogs, and a jury could find that defendant had control over the harboring of the dogs and had the ability to order the management company to order the tenant to remove the dogs.

**4. Premises Liability—lawful visitor—dog attack**

The trial court did not err in a negligence case arising from a tenant's dogs attacking a third party by denying defendant landlord's motions for directed verdict and judgment notwithstanding the verdict even though defendant contends that plaintiff was a trespasser at the time and place of the injury, because plaintiff was a lawful visitor when: (1) defendant landlord placed a "For Sale" sign on its property and allowed buyers and their agents to inspect the property; and (2) plaintiff was an employee of a prospective buyer who entered the property for the sole purpose of inspecting it for a potential purchaser.

Justice PARKER dissenting.

Justice WAINWRIGHT joins in the dissent.

Appeal by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 153 N.C. App. 413, 570 S.E.2d 248 (2002), reversing a judgment entered on 4 October 2000 and an order entered on 14 February 2001 by Judge James C. Spencer, Jr. in Superior Court, Wake County. The issue from the Court of Appeals dissent was heard in the Supreme Court 17 November 2003.

On 5 February 2004, this Court allowed plaintiff's petition for writ of certiorari as to an additional issue, and on 4 March 2004, this Court allowed defendant Colonial's petition for discretionary review as to three additional issues. The issues raised in both parties' petitions were decided by this Court on the parties' briefs and without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

HOLCOMB v. COLONIAL ASSOCS., L.L.C.

[358 N.C. 501 (2004)]

*Smith Moore LLP, by James G. Exum, Jr.; and Waller, Stroud, Stewart & Araneda, LLP, by W. Randall Stroud, for plaintiff-appellant.*

*Bailey & Dixon, L.L.P., by Gary S. Parsons and Warren T. Savage, for defendant-appellee Colonial.*

ORR, Justice.

This case involves the issue of whether a landlord can be held liable for negligence when his tenant's dogs injure a third party. Although the dogs in this case committed vicious acts, we refer the readers of this case to *State v. Wallace* for a recitation of the many virtues of dogs. 49 N.C. App. 475, 271 S.E.2d 760 (1980). As Judge Harry Martin said, "[t]he dog is of a noble, free nature, yet is domesticated and dedicated to the well-being of people of all races." *Id.* at 477, 271 S.E.2d at 762. Thus, the acts committed by the dogs in this case should not cast aspersion on the species as a whole.

The facts of this case are as follows: Colonial Associates, L.L.C. ("Colonial" or "defendant") owned thirteen acres of land on Nelson Road in Wake County. There were two houses on this land. Defendant John Olson ("Olson") resided as a tenant in one of the houses. John Feild ("Feild")[1] resided as a tenant in the other house. Management Associates ("Management") managed the rental property for Colonial. Olson's lease granted Colonial[2] the right to terminate the lease in the event the property was sold for commercial development. The property, including both houses, was posted for sale the entire time Olson resided in the house. The property was listed with Powell Properties, Inc. Colonial knew Powell Properties was showing the house.

Under the terms of the lease, Olson could keep one Rottweiler dog on the property. However, Management permitted Olson to keep two Rottweilers on the property. The lease required Olson to "remove any pet . . . within forty-eight hours of written notification from the landlord that the pet, in the landlord's sole judgment, creates a nuisance or disturbance or is, in the landlord's opinion, undesirable."

1. Mr. Feild is also referred to as "Mr. Field" in portions of the trial transcript and other court documents.

2. The lease identified Dillard Powell, owner of Colonial, as the landlord. When Olson entered his lease, Mr. Powell owned the property in his individual capacity. At some time during the lease Mr. Powell transferred ownership of the leased premises to Colonial. Colonial then became Olson's landlord and was empowered with all powers granted to Mr. Powell in the lease.

The evidence demonstrated that the dogs frequently were not confined or restrained and were allowed to run freely. Moreover, on two occasions prior to the incident involving plaintiff, one of Olson's Rottweilers attacked nearby neighbors.

The first such incident occurred sometime in 1993 or 1994. One of the Rottweilers positioned itself between Feild and his vehicle. When Feild "realized that [he] was up against something," he went to another vehicle to get a machete for protection. The dog lunged at Feild and was struck by the machete, resulting in a gash in the dog's nose. Feild stated that he did not see Olson during the incident, but he related the incident to Management.

The second incident occurred sometime before April 1996 and took place nearly 300 feet from Olson's house. Tomas Sanchez, Feild's co-worker, was retrieving scaffolding from Feild's house when both dogs attacked him. One of the dogs bit Sanchez in the leg. Management knew of the incident.

The incident which resulted in the case *sub judice* occurred on 18 April 1996. Parker Lincoln Developers, a company interested in purchasing Colonial's property, contacted plaintiff Cecil Holcomb, a demolition contractor and licensed builder, to request an estimate on demolishing the two rental homes. Plaintiff visited the rental homes in order to prepare his estimate. He rang the doorbell and knocked on the door to the house where Olson resided. When no one answered, plaintiff stood on the sidewalk and made notes about the house. Plaintiff then walked toward the back of the house where Olson's two dogs approached him and began to threaten him. One of the Rottweilers lunged at plaintiff, causing him to fall to the ground. Plaintiff incurred a distal radius fracture and injured his back when he braced himself for the fall.

On 26 May 1998, plaintiff filed suit against Colonial and Olson in Wake County Superior Court, asserting a strict liability claim against Olson and negligence claims against Olson and Colonial. The trial court denied Colonial's motion for a directed verdict on 22 September 2000. On 26 September 2000, a jury returned a verdict in favor of Holcomb, finding both Olson and Colonial negligent and awarding Holcomb $330,000.00 in damages. On 14 February 2001, the trial court entered an order denying Colonial's motions for judgment notwithstanding the verdict and a new trial.

A divided panel of the Court of Appeals reversed the judgment of the trial court. The Court of Appeals held the trial court erred in fail-

ing to direct a verdict or grant Colonial's motion for judgment notwithstanding the verdict after the trial. *Holcomb v. Colonial Assocs.*, 153 N.C. App. 413, 418, 570 S.E.2d 248, 251 (2002). The majority concluded that "plaintiff has failed to establish an essential element of his prima facie case, i.e., that Colonial was an *owner* or *keeper* of the two dogs." *Id.*

The dissenting opinion in the Court of Appeals, however, concluded that "plaintiff presented sufficient evidence on the *prima facie* elements of his case against Colonial." *Id.* at 420, 570 S.E.2d at 253. The dissent found plaintiff's facts "tend to support an inference that Colonial is a keeper by virtue of its control evident in the lease," *id.* at 420, 570 S.E.2d at 252, as required under strict liability.

Plaintiff appealed to this Court as of right pursuant to N.C.G.S. § 7A-30(2) (2003). On 15 November 2002, plaintiff filed a petition for discretionary review as to additional issues, arguing that the Court of Appeals erred by deciding the case on a strict liability (wrongful keeper) theory, rather than the negligence (premises liability) theory that was alleged by plaintiff and found by the jury at trial. On 2 December 2002, defendant Colonial filed a conditional petition for discretionary review as to two additional issues: (1) whether the superior court erred by holding defendant-appellee Colonial liable for the torts of its independent contractor, Management Associates; and (2) whether the superior court erred by holding defendant-appellee liable to plaintiff-appellant when plaintiff was a trespasser at the time and place of his injury. On 27 March 2003, this Court denied plaintiff's petition for discretionary review and dismissed defendant's conditional petition as moot.

On 30 April 2003, plaintiff filed a petition for writ of certiorari as to additional issues, and on 13 May 2003, defendant Colonial again filed a conditional petition for discretionary review of additional issues. In these petitions, both parties made essentially the same arguments they made in their previous petitions for discretionary review. We denied both of these petitions on 21 August 2003.

On 17 November 2003, we heard oral arguments in this case. The only issue properly before this Court at that time was the issue arising from the Court of Appeals dissent: whether the Court of Appeals erred by concluding that defendant Colonial was neither the owner nor the keeper of Olson's dogs. However, after further review, this Court determined that we should address the issues of premises liability and negligence. On 5 February 2004, this Court *ex mero motu*

vacated its 21 August 2003 order denying plaintiff's petition for writ of certiorari as to additional issues and allowed plaintiff's petition for writ of certiorari as to the additional issue of the validity of premises liability principles of negligence. This Court then ordered the parties to brief that issue.

On 13 February 2004, defendant Colonial filed a petition for discretionary review as to the following additional issues: (1) whether the superior court erred by holding defendant Colonial liable for the torts of its independent contractor, Management Associates; (2) whether the superior court erred by holding Colonial liable to plaintiff when plaintiff was a trespasser at the time and place of his injury; and (3) whether the superior court erred in instructing the jury regarding Colonial's duty and Management's status as an independent contractor. On 4 March 2004, we allowed this petition.

The parties then submitted briefs on the issue in plaintiff's petition for writ of certiorari and the three issues in defendant's petition for discretionary review, but did not argue them before this Court. We have decided these additional issues based on the parties' briefs.[3]

I.

[1] We first address the issue before us based on the Court of Appeals dissent: Whether the Court of Appeals correctly concluded that Colonial was neither an owner nor a keeper of Olson's dogs. The Court of Appeals majority and dissent focused their analysis on whether Colonial was the owner or keeper of Olson's dogs based upon the issue of strict liability as set out in *Swain v. Tillett*, 269 N.C. 46, 152 S.E.2d 297 (1967). In *Swain*, strict liability was based upon whether: (1) " 'the animal was dangerous, vicious, mischievous, or ferocious, or one termed in law as possessing a vicious propensity; and (2) [whether] the *owner* or *keeper* knew or should have known of the animal's vicious propensity, character, and habits.' " *Id.* at 51, 152 S.E.2d at 301 (quoting *Sellers v. Morris*, 233 N.C. 560, 561, 64 S.E.2d 662, 663 (1951)) (alterations in original). However, plaintiff did not allege in his complaint that defendant Colonial was strictly liable. Instead plaintiff alleged defendant was negligent, and in fact the case was tried against Colonial on a negligence theory.

---

3. We note that the primary question raised in defendant Colonial's appeal to the Court of Appeals was whether the trial court erred by denying its motions for a directed verdict, judgment notwithstanding the verdict, and a new trial. The substantive issues directed to this question are those we now address.

Plaintiff need not show defendant was an owner or a keeper in order to demonstrate a *prima facie* case of negligence. The fact that we recognize a strict liability cause of action against owners and keepers of vicious animals, *Swain*, 269 N.C. at 51, 152 S.E.2d at 301, does not preclude a party from alleging negligence (a different cause of action) against a party who may or may not be an owner or keeper of an animal. Because we conclude that plaintiff was not required to show Colonial was an owner or keeper of the dogs in order to show Colonial was negligent, we conclude that the Court of Appeals majority and dissent erred by concluding that Colonial could not be liable unless it was the owner or keeper of the dogs. Moreover, the Court of Appeals majority erred by holding that defendant's motions for directed verdict and judgment notwithstanding the verdict should have been allowed.

## II.

**[2]** Next, we address defendant's argument that the trial court erred in instructing the jury regarding Colonial's duty and Management's status as an independent contractor. The trial court's instructions about Colonial's duty were as follows:[4]

In this case, the plaintiff contends, and the defendant denies, that Management Associates was negligent in one or more of the following ways:

The first contention is that Management Associates as agent of the owner of the premises, Colonial Associates, L.L.C[.], failed to use ordinary care by failing to require the defendant Olson to restrain his Rottweiler dogs, or remove them from the premises when Management Associates knew, or in the exercise of reasonable care, should have known, from the dogs' past conduct, that they were likely, if not restrained, to do an act from which a reasonable person in the position of Management Associates could foresee that an injury to the person of another would be likely to result.

The second contention is that Management Associates, as agent, and owner Colonial Associates, L.L.C., failed to use ordinary care by failing to give adequate warning to a lawful visitor of a hidden or dangerous condition, that is, unrestrained Rottweiler

---

4. The jury instructions address Management's duty. However, because the issue of Colonial's negligence was submitted to the jury based on the theory that Management was Colonial's agent, the jury instructions also address Colonial's duty.

**HOLCOMB v. COLONIAL ASSOCS., L.L.C.**

[358 N.C. 501 (2004)]

dogs, about which Management Associates knew, or in the exercise of reasonable care, should have known.

Defendant first argues the above instructions are erroneous because "they place a duty on a landlord to protect third parties from a tenant's dogs that the landlord neither owns nor keeps." However, as we stated above, a party need not be an owner or a keeper of an animal to be liable for negligence based on injuries caused by that animal. Therefore, defendant's argument is without merit.

Colonial also argues the instructions are erroneous because they "place[] precisely the same duty on a landlord as on the tenant, even though the tenant had exclusive possession of the property and control of the dogs." Colonial cites a Court of Appeals case for the proposition that " 'a landlord who has neither possession nor control of the leased premises is not liable for injuries to third persons.' " *Vera v. Five Crow Promotions, Inc.*, 130 N.C. App. 645, 650-51, 503 S.E.2d 692, 696 (1998) (quoting *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 694 (Del. Super. Ct. 1989), *aff'd*, 571 A.2d 786 (Del. 1990). However, as the quote from *Vera* indicates, a landlord is potentially liable for injuries to third persons if he has " 'control of the leased premises.' " *Id.*; *see also Franklin Drug Stores, Inc. v. Gur-Sil Corp.*, 269 N.C. 169, 173, 152 S.E.2d 77, 79 (1967). Similarly, a landlord owes a duty to third parties for conditions over which he retained control. *See Batra v. Clark*, 110 S.W.3d 126, 129-30 (Tex. App.-Houston 1st Dist. 2003); *see also Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 514, 118 Cal. Rptr. 741, 747 (Cal. App. 5th Dist. 1975) (holding the landowner had control via the power "to order his tenant to cease harboring the dog under pain of having the tenancy terminated"); *Shields v. Wagman*, 350 Md. 666, 684, 714 A.2d 881, 889-90 (1998) (holding the landowner could exercise control over his tenant's dog by refusing to renew a month-to-month lease agreement); *McCullough v. Bozarth*, 232 Neb. 714, 724-25, 442 N.W.2d 201, 208 (1989) (holding liability may be imposed on a landlord where, "by the terms of the lease, [the landlord] had the power to control the harboring of a dog by the tenant and neglected to exercise that power").

In the case *sub judice*, the lease agreement required the tenant to "remove any pet . . . within forty-eight hours of written notification from the landlord that the pet, in the landlord's sole judgment, creates a nuisance or disturbance or is, in the landlord's opinion, undesirable." Thus, landlord and tenant contractually agreed that landlord would retain control over tenant's dogs. This lease provision granted Colonial and Management sufficient control to remove the danger

HOLCOMB v. COLONIAL ASSOCS., L.L.C.

[358 N.C. 501 (2004)]

posed by Olson's dogs. Therefore, because the evidence supports a jury finding that defendant had control over the dogs, defendant's argument is without merit.

[3] Colonial also contends the trial court's instruction on agency was incorrect. The jury found that Management was Colonial's agent and therefore Colonial was liable for Management's negligence. Specifically, Colonial contends the trial court erred by instructing the jury that an independent contractor can be an agent. Colonial further contends that because Management was an independent contractor, not Colonial's agent, the jury could not impute Management's knowledge to Colonial. The trial court instructed the jury as follows:

> However, I instruct you that an independent contractor may also be an agent.
>
> Plaintiff contends and defendant denies that for purposes of communication, negotiation, and contacts with and concerning its tenants, Management Associates was, though an independent contractor in certain respects, acting as the agent of Colonial Associates, L.L.C. for these purposes.

"There are two essential ingredients in the principal-agent relationship: (1) authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." 24 Strong's North Carolina Index 4th *Principal and Agent* § 1 (1993) (footnote omitted). Ordinarily an independent contractor cannot be an agent. *Livingston v. Essex Inv. Co.*, 219 N.C. 416, 425, 14 S.E.2d 489, 494 (1941).

However, we agree with the trial court's statement that an independent contractor can, in certain respects, be an agent. *Standard Supply Co. v. Reliance Ins. Co.*, 49 N.C. App. 616, 621, 272 S.E.2d 394, 397 (1980); Restatement (Second) of Agency 2d § 2(3) at 12 (1958). Whether an independent contractor is an agent in certain instances depends upon the degree of control exercised by the person or entity who hired the independent contractor. *Gammons v. N.C. Dept. of Human Res.*, 344 N.C. 51, 58, 472 S.E.2d 722, 726 (1996) (whether an entity is an agent depends upon the degree of control exercised by the principal). The evidence supports a finding that Colonial possessed control over Management with respect to the subject of the litigation—the dogs. Olson's lease gave Dillard Powell, owner of Colonial, the authority to remove Olson's dogs at any time. After

plaintiff filed suit against Colonial, Powell exercised this control, requesting Management to order Olson to remove the dogs. Management complied with Powell's request and, pursuant to this request, Olson removed his dogs from the property. Thus, a jury could find Colonial had·control over the harboring of the dogs and had the ability to order Management to order Olson to remove the dogs. Looking at the evidence in the light most favorable to plaintiff, the evidence supports both the jury instruction on agency and the jury's finding that Management was Colonial's agent.

[4] Additionally, defendant contends that because the evidence shows as a matter of law that plaintiff was a trespasser at the time and place of the injury, the Court of Appeals properly reversed the trial court's denial of a directed verdict or judgment notwithstanding the verdict. "[A] trespasser has no basis for claiming protection beyond refraining from willful injury." *Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998). A landowner is not liable to trespassers for negligence. *Id.* Therefore, we must determine whether plaintiff was a lawful visitor.

A lawful visitor is one who is on the premises with the landowner's permission or by legal right. *Nelson*, 349 N.C. at 617, 507 S.E.2d at 883-84. The permission granted by a landowner may be express or implied from the circumstances. *See id.*; *Mazzacco v. Purcell*, 303 N.C. 493, 497, 279 S.E.2d 583, 586-87 (1981) (*overruled in part by Nelson*, 349 N.C. 615, 507 S.E.2d 882). Permission to enter may be implied when a visitor adheres to the normal customs of the community unless a landowner expresses specific opposition to those customs. *Smith v. VonCannon*, 283 N.C. 656, 661-62, 197 S.E.2d 524, 528-29 (1973). Whether a person has implied permission to enter another's land must be evaluated on the basis of the reasonableness of the visitor's entry, with due regard given "to customs prevailing in the community." *Id.* at 662, 197 S.E.2d at 529.

In the instant case, the jury found plaintiff was a lawful visitor. The evidence supports the jury's finding. Colonial placed a "For Sale" sign on its property and allowed buyers and their agents to inspect the property. Plaintiff, an employee of a prospective buyer, entered the property for the sole purpose of inspecting it for a potential purchaser. After evaluating the evidence presented at trial, the jury found that plaintiff was "a lawful visitor at the time and place of his alleged injury." The evidence supports this finding. Therefore, defendant's argument is without merit.

**HOLCOMB v. COLONIAL ASSOCS., L.L.C.**

[358 N.C. 501 (2004)]

Because we ruled against defendant's position based upon the dissent and because defendant has failed to show error in the issues presented by its petition for discretionary review, we find it unnecessary to consider the issue presented by plaintiff in his petition for writ of certiorari.

The decision of the Court of Appeals is reversed, and that court is instructed to reinstate the judgment of the trial court.

REVERSED.

Justice PARKER dissenting.

Until today this Court has not applied premises liability principles to allow recovery for injuries inflicted by an animal. The requirements for liability have been that the person be the keeper of the animal and have knowledge of the animal's vicious propensity. In *Swain v. Tillet*, 269 N.C. 46, 152 S.E.2d 297 (1967), this Court stated:

> To recover for injuries inflicted by a domestic animal, *domitae naturae*, plaintiff must allege and prove: "(1) that the animal was dangerous, vicious, mischievous, or ferocious, or one termed in law as possessing a vicious propensity; and (2) that the *owner* or *keeper* knew or should have known of the animal's vicious propensity, character, and habits." (Emphasis added.) *Sellers v. Morris*, 233 N.C. 560, 561, 64 S.E.2d 662, 663; *Plumidies v. Smith*, 222 N.C. 326, 22 S.E.2d 713; *Hill v. Moseley*, 220 N.C. 485, 17 S.E.2d 676. See also *Sink v. Moore and Hall v. Moore*, 267 N.C. 344, 148 S.E.2d 265. "The gravamen of the cause of action in this event is not negligence, but rather the wrongful keeping of the animal with knowledge of its viciousness; and thus both viciousness and scienter are indispensable elements to be averred and proved." *Barber v. Hochstrasser*, 136 N.J.L. 76, 79, 54 A.2d 458, 460; 2 Strong, N.C. Index, Animals § 2 (1959).

*Id.* at 51, 152 S.E.2d at 301. Thus, North Carolina jurisprudence has wisely had a separate cause of action which recognized the special nature of animals and that responsibility for an injury caused by an animal must be placed on the person who maintains the animal and is in the best position to control the creature.

Unlike a hole that can be filled or a broken step that can be repaired, an animal is not a condition of the premises. Animals are

mobile and have moods and personalities. Thus, to hold that a landlord can be liable in negligence for an attack by a tenant's animal on account of the landlord's failure, pursuant to the terms of a lease, to order removal of an animal places an undue burden on the landlord. In my opinion the control is too remote to hold that the landlord breached its duty of care. Notwithstanding the majority's overture to dogs, today is, I fear, a sad day for Fido and Rover. Accordingly, I respectfully dissent.

Justice WAINWRIGHT joins in this dissent.